GARDNER BREWER & others *vs.* PROPRIETORS OF THE BOSTON
THEATRE & others.

SAME *vs.* SAME.

SAME *vs.* SAME.

A bill in equity by stockholders of a corporation, in behalf of themselves and the other
stockholders, for fraud and conspiracy whereby the interests of the corporation have
been sacrificed, brought against the corporation and persons who were its directors in
former years, and others, cannot be maintained, if it does not show either that an effort
has been made to set the corporation in motion to redress the wrong, or an application
been made to the board of directors in office at the time of bringing the bill, or that such
effort or application would be useless; and this requirement is not satisfied by an alle-
gation that a majority of the directors are acting in the interest and under the control of
persons charged with the fraud.

A bill in equity brought by stockholders of a corporation, in behalf of themselves and the
other stockholders, against the corporation, and against certain directors and other in-
dividuals for fraudulently conspiring to lease the corporate property on improperly low
terms and share in the profits of the lessees, which alleges that individual defendants
own or control a majority of the stock and control the proceedings at the stockholders'
meetings, and that a majority of the directors are knowingly and fraudulently colluding
with them to continue to them the control of the corporation and its property, suffi-
ciently shows that no redress can be obtained through the corporation or the directors,
and that neither the lessees, nor all, nor a majority of, the directors, are necessary parties
to the bill.

The recital, in a bill in equity for fraud, of other frauds by some of the defendants, which
are the subject matter of another bill in equity filed by the same plaintiff at the same
time, does not make the bill multifarious, nor can he be compelled to elect on which
bill he will proceed.

THREE BILLS IN EQUITY by Gardner Brewer and twenty-four
others, stockholders in the corporation chartered by the St. of
1858, *c.* 79, under the name of The Proprietors of the Boston
Theatre. The bills were inserted in writs, each of which was
dated June 21, 1869, and were filed August 2, 1869.

The first bill, which was brought in behalf of the plaintiffs
and all other stockholders of the corporation except such as
were made defendants, against the corporation and Orlando
Tompkins, Benjamin W. Thayer and George N. Faxon, alleged
that the corporation owned a theatre in Boston; that the num-
ber of its directors was fixed at seven; that at the annual meet-
ings in the month of July in 1864 and 1865 Tompkins and
Faxon were chosen on the board of directors; that the thea-

tre was nominally leased to Henry C. Jarrett in 1864 for one year from August 1, and also in 1865 for one year from August 1; that "Tompkins, being a director, covertly and by collusion with Faxon and Thayer, and without the knowledge of the other directors, except Faxon, was associated with Jarrett and interested in the profits of said leases; that Jarrett made application for said leases at the solicitation of Tompkins, being a director, and for the joint benefit of Jarrett and Tompkins; that, covertly and without the knowledge of the other directors, except Faxon, and in violation of his own duty as a director, Tompkins agreed with Jarrett to divide with him the profits of said leases; that large net profits were made by Jarrett, as nominal lessee, from said leases, and from the use and occupation of the theatre and the management of the same, and were shared equally between Tompkins and Jarrett; that Thayer, by agreement with Tompkins, or with Tompkins and Jarrett, shared equally the profits received by Tompkins;" that Tompkins and Faxon, being directors, and Thayer fraudulently colluding with Tompkins and Faxon and each of them, "procured that the lease should be given to Jarrett in each of the years 1864 and 1865, at a rent much smaller than it was worth in the market, and smaller than the directors might have got from other parties, for the benefit of Tompkins and Thayer, and in fraud of the corporation; that thereupon Tompkins, being a director, covertly and in violation of the duties of his office and with the aid of Faxon, and of Thayer, colluding with Tompkins and Faxon in a breach of their trust as directors, procured large and extravagant amounts to be expended upon the theatre in repairs, new properties and furniture, and for other like purposes, real or pretended, for the private benefit of the parties interested in the lease and in fraud of the corporation;" and "that a majority of the present board of directors of said defendant corporation are acting in the interest of, and are under the control of, Tompkins and Thayer, and these plaintiffs have instituted a suit in this court concurrently herewith" [which was the third of these bills in equity] "against the present board for breaches of trust· by them committed in their

office in collusion with Tompkins and Thayer, reference to which suit is hereby made as a part of this bill." The prayer was for discovery as to the premises, and that the defendants " may come to a just and true account as to the same, and may be decreed to be trustees for the defendant corporation in respect of all sums received as herein alleged, and for such further sums as they might and ought to have received or accounted for to the corporation," and for general relief. Tompkins answered. The corporation and Thayer and Faxon demurred generally for want of equity.

The second bill, which was brought in behalf of the plaintiffs and all other stockholders of the corporation except such as were made defendants, against the corporation and Tompkins, Thayer, Faxon, George E. Hersey, Noble H. Hill and Frederick O. Prince, alleged that the corporation owned a theatre in Boston; that the number of its directors was fixed at seven; that at the annual meeting in the month of July 1864 Tompkins was chosen on the board of directors; that at the annual meeting in 1865, Tompkins, Faxon, Hersey, Hill and Prince were chosen on the board, and at the annual meeting in 1866 Faxon, Hersey, Hill and Prince were chosen on the board; that the theatre was nominally leased to Jarrett in 1864 for one year from August 1, and also in 1865 for one year from August 1, and was nominally leased to Edwin Booth and John S. Clarke in 1866; " that Tompkins, being a director, covertly and without the knowledge of the other directors, except Faxon, and by collusion with Faxon and Thayer, and in violation of his trust as a director, was jointly interested with Jarrett in both of the two leases made to him and in the management of the theatre thereunder, and received therefrom large pecuniary profits and shared the same with Thayer, and that Faxon and Thayer knowingly aided Tompkins in his breach of trust; that it was well known to Hersey, Hill and Prince at the time of their election as directors, and at the time of their becoming candidates for said office, that Tompkins and Thayer were pecuniarily interested in the leases and in the management of the theatre, and had derived large profits therefrom, and that they became candi

dates for the office of director and were elected as aforesaid at the request of Tompkins and Thayer, and by their agency; that during the pendency of the second lease to Jarrett, it was determined by Tompkins and Thayer to separate from Jarrett unless he would agree to share the profits of future leases with them in equal thirds; that Jarrett refused so to do, and the parties agreed to separate at the expiration of the lease then pending;" "that the offer of Booth and Clarke was made at the solicita tion of Tompkins and Thayer, and for their benefit, wholly or in part, and in pursuance of an agreement that Tompkins and Thayer should share the profits of the lease and of the management of the theatre thereunder; that Tompkins, acting in violation of his duty as a director and in prejudice of the corporation for his own private gain, so contrived that the offer of Booth and Clarke was accepted by the directors, and the other offers aforesaid were rejected; that large and extravagant and unnecessary amounts of money were expended upon the theatre for repairs, new properties and furniture for the private benefit of Tompkins and Thayer, and to the prejudice of the corporation; that the directors, Faxon, Hersey, Hill and Prince, and also Thayer, knowingly colluded with said Tompkins in his said breach of trust, and through fraud and gross negligence procured and consented that the lease should be awarded to Booth and Clarke, and that such amounts should be expended as aforesaid for the private gain of Tompkins and Thayer and to the prejudice of the corporation; and that Tompkins and Thayer received large sums of money as net profits from the lease to Booth and Clarke and from the management of the theatre thereunder, and shared the profits between them."

The second bill further alleged that "during the years 1863, 1864 and 1865, and later, and especially during the early part of the year 1866, Tompkins and Thayer in person, and by their agents, and in particular through the agency of Hill and Hersey, who were at that time directors, were engaged in buying up and getting control of the stock of the corporation;" that "at the annual meeting in 1866 they owned and controlled a clear majority of the stock; that Tompkins and Thayer have at

divers times corrupted and unduly influenced the said defendant directors;" "that said defendant directors have been in fact unduly influenced as aforesaid by Tompkins and Thayer; that by reason of said undue influence, and through fear of the power of said Tompkins and Thayer, and through gross negligence and a mistaken notion of the general rights of a majority of the stockholders in a corporation, and through fraud and corruption, the said defendant directors allowed themselves to become little else than the creatures of the said Tompkins and Thayer, and the registers of their wishes, and came to consider that no duty rested upon them to do more than make the said corporation serviceable to the said Tompkins and Thayer;" "that Prince, Hill and Faxon are now members of the board of directors of said defendant corporation, and that a majority of the said present board of directors are acting in the interest of, and are under the control of, Tompkins and Thayer, and these plaintiffs have instituted a suit in this court concurrently herewith" [which was the third of these bills in equity] "against the said present board, for breaches of trust by them committed in their said office, in collusion with Tompkins and Thayer, reference to which suit is hereby made a part of this bill."

The prayer was in the same words as that of the first bill. Tompkins answered. The corporation and the other defendants demurred generally for want of equity.

The third bill, which was brought in behalf of the plaintiffs and all other stockholders of the corporation except such as were made defendants, against the corporation and Tompkins, Thayer, Faxon, Hersey, Hill, Prince, Aaron W. Spencer, William T. Hart, Newell A. Thompson, Edmund F. Cutter and Junius B. Booth, alleged that the corporation owned a theatre in Boston; that the number of its directors was fixed at seven; that at the annual meeting in the month of July 1864 Tompkins was chosen on the board of directors, at the annual meeting in 1865 Tompkins, Faxon, Hersey, Hill and Prince were chosen on the board, at the annual meetings in 1866 and 1867 the board chosen consisted of Hersey, Hill, Prince, Spencer, Hart, Thompson and Cutter, and at the annual meeting in 1868

the board chosen consisted of the same persons, with the substitution of Faxon for Hersey; that the theatre was nominally leased to Jarrett in 1864 for one year from August 1, and also in 1865 for one year from August 1, was nominally leased to Edwin Booth and Clarke in 1866 for one year from August 1, and that " in each of the years 1867, 1868 and 1869 the theatre was nominally leased to Junius B. Booth for one year from the first day of August in said years, respectively;" "that Tompkins and Thayer were associated with the said nominal lessees in each of the six years last named, and shared in the profits of said leases, and have received large sums from the same and from each of them except the last named, and from the use and occupation of the theatre thereunder, as net profits, and that Tompkins and Thayer caused the applications for a lease to be made by the said nominal lessees for their own private advantage, to wit, the advantage of Tompkins and Thayer, and covertly and by means of the stratagems of Tompkins, acting in the office of director of said corporation, and by divers other wrongful means, procured the leases to be awarded to the nominal lessees for the private advantage of Tompkins and Thayer and to the prejudice of the corporation, for a rent much less than the real market value of the leases, and much less than the directors would otherwise have obtained therefor; and that it was well known to the defendants, Hill, Hersey, Hart, Prince, Thompson, Spencer, Cutter and Faxon, and each of them, at the time of their election as directors, respectively, and at the time of their respectively becoming candidates for said office, that Tompkins and Thayer were pecuniarily interested in the leases which had been previously awarded as aforesaid and in the management of the theatre thereunder, and that Tompkins and Thayer desired still longer to retain control of the leases of the theatre, and had derived large profits from their previous interest in the leases and management, and that said persons were elected directors as aforesaid at the request of said Tompkins and Thayer and by their agency."

The third bill further alleged " that during the years 1863, 1864 and 1865, and later, and especially in the early part of the

year 1866, the said Tompkins and Thayer in person and by their agents, and in particular through the agency of the said Hill, Hart and Hersey, who were at the time directors, were engaged in buying up and getting control of the stock of the said corporation;" that "at the annual meeting of stockholders in the year 1866 they owned and controlled a clear majority of said stock; that Tompkins and Thayer have at divers times corrupted and unduly influenced the defendant directors;" "that, by reason of said undue influence and corruption, and through fear of the power of Tompkins and Thayer, and through gross negligence and a mistaken notion of the general rights of a majority of the stockholders in a corporation, and through fraud, the said defendant directors have allowed themselves to become little else than the creatures of Tompkins and Thayer and the registers of their wishes, and have come to consider that no duty rested or now rests upon them as directors to do more or other than to make said corporation, and the property of the plaintiffs therein invested, serviceable to Tompkins and Thayer; and that Tompkins and Thayer have conspired together and with certain of the directors and with said Booth, as hereinafter set forth, to get and retain control of said corporation and to manage the same in subservience to their own private gain and to the prejudice of the corporation."

This third bill also alleged that "said directors, chosen in the year 1866, in violation of their duty in said office, and being prompted thereto by Tompkins, Thayer, Faxon and Booth, knowing of said breach of trust, and in pursuance of the conspiracy aforesaid, and taking part therein, to the prejudice of the corporation, and for the private advantage of Tompkins and Thayer, nominally made a lease of the theatre to Junius B. Booth for one year from August 1, 1867, at the rent of $24,000, with the right of renewal on the same terms, the same being much less than the real market value of the said lease and the value which the directors might easily have obtained therefor, and expended large, extravagant and unnecessary sums upon the theatre for repairs, new furniture and properties, real or pretended, for the private benefit of Tompkins and Thayer, and to

the prejudice of the corporation; that in the year 1868 the said directors, elected in the year 1867, in violation of their duty in said office, and being moved and aided by Tompkins, Thayer, Faxon and Booth, knowing of said breach of trust, and in pursuance of the conspiracy aforesaid, and taking part therein, to the prejudice of the corporation, and for the private benefit of Tompkins and Thayer, nominally leased the theatre to Booth, for the year beginning on August 1, 1868, at the rent of $16,000, the same being much below the real value in the market of the lease, and the value which the directors might easily have obtained therefor; and thereupon expended large, extravagant and unnecessary sums upon the theatre for repairs, new furniture and properties, real or pretended, for the private advantage of Thayer and Tompkins, and to the prejudice of the corporation; that in the year 1869, the said directors elected in the year 1868, in violation of their duty in said office, and being moved and aided by Tompkins, Thayer, Hersey and Booth in said breach of trust, knowing thereof and in pursuance of the conspiracy aforesaid, and taking part therein, to the prejudice of the corporation and for the private advantage of Tompkins and Thayer, nominally leased the theatre to Booth for one year from August 1 in said year, at the rent of $16,000, the said rent being much less than the real value in the market of said lease, and the value which said directors might easily have obtained therefor; that said leases to Junius B. Booth have all been in writing, and have provided, in substance, that the lessee should employ a first class theatrical stock company, and should conduct and manage said theatre as a first class establishment; that Booth has been permitted by said defendant directors, through gross negligence and fraudulent collusion with Tompkins, Thayer and Booth, in the conspiracy aforesaid, for the private benefit of said parties interested in the leases, and to the prejudice of the corporation, to violate the terms of the said leases in many ways, and in particular to employ only inferior and second rate or third rate theatrical stock companies, and to manage and conduct the theatre as a second class or third class establishment, and to waste the property of the corporation, and to remove the same from

the theatre and appropriate the same to his own use and to the use of Tompkins and Thayer, without any compensation or any authority therefor."

The prayer was in the same form as that of the other two bills, except that, in addition, it asked that "the said last named lease to Junius B. Booth may be decreed to be delivered up and cancelled." The corporation demurred. Tompkins, Thayer and Booth answered as to part of the bill, and demurred as to part.

The three cases were heard on the bills and demurrers, by *Gray,* J., and by him reserved for the determination of the full court.

*S. Bartlett & R. M. Morse, Jr.,* for the lessees.

*H. W. Paine & H. H. Coolidge,* for the corporation and directors.

*B. R. Curtis & J. B. Thayer,* for the plaintiffs.

WELLS, J. These three bills are brought by certain stockholders of a corporation, in behalf of themselves and all other stockholders not joined as defendants, to recover, for the benefit of the corporation, profits supposed to have been gained to its prejudice, and damages for losses suffered by it, through the improper conduct of certain of its officers during several years past, in leasing its property to parties with whom they secretly confederated to share in the advantages of the contracts so made. The corporation is joined as a party defendant.

One question raised by the demurrers is, whether the bills show sufficient cause for maintaining actions in this form in the name of other parties than the corporation whose interests alone are affected directly, whose rights are to be vindicated, and to whose use exclusively the judgment, if recovered, must enure.

It is unquestioned that, at law, no action could be maintained for the causes set forth, otherwise than in the name and by the authority of the corporation itself. Ordinarily the same rule will apply in equity. It is only from the necessity of the case, and to prevent a failure of justice, that suits in equity in the form of these bills are allowed. To justify a suit in this form, the bill must show that suitable redress is not attainable through the action of the corporation. To this extent, all au

thorities agree. There is some diversity as to what will satisfy the requirement. Whether there must be an effort to move the corporate body to the redress of its own injuries; and, to that end, an attempt to procure a meeting and vote of the stockholders; or whether an application to the present board of officers by whom the corporate affairs are managed, and a refusal by them to allow proceedings in its name and behalf, would be sufficient, does not seem to have been determined by any clear concurrence of decision. It may depend somewhat upon the character of the corporate organization, and the extent of powers confided to its officers for the time being. Where the stock holders retain no control of the corporate business, except by means of an annual election of officers, those officers, during their term of service, represent the corporation for all purposes; and a refusal by them to take proper action for the protection of its interests, or to allow the use of the corporate name for that purpose, ought to be sufficient to justify a proceeding in behalf of the individual stockholders, making the corporation a party defendant. A formal application and refusal need not be alleged, if enough appears to show that such an application would be unavailing. When the directors themselves are the parties charged with the wrong, or by whose fraud or wilful collusion the wrong has been accomplished, and the suit is to be brought against them, they are, by the very nature of the case, incapacitated for the service of representing the corporation in any action for the restoration of its rights, whether by suit or proceeding *in pais.* If the corporate action is under the control of such parties, it is a sufficient reason of necessity to warrant proceedings by suit in the name and behalf of the individual stockholders.

Do these bills allege sufficient grounds for proceeding in this manner, in accordance with the principles above indicated? We think not.

1. It is not alleged that any effort has been made to set the corporation in motion for the purpose of securing its own redress.

2. No application to the directors, to take action in the matter, is alleged. It does not even appear that the directors in

office when the suit was brought had been informed or were aware of the facts upon which these proceedings are founded. These bills were filed August 2, 1869, after the annual meeting of the corporation, as we suppose. It does not appear who are the directors elected in 1869, nor that there is not a majority of them who are free from any charge of violating their trusts, or of confederation or collusion with those who have perpetrated the alleged wrongs against the corporate interests. In the second bill it is alleged that Prince, Hill and Faxon, defendants in that suit, " are now members of the board of directors." But, as the board consists of seven members, they constitute a minority only. The third bill also mentions " defendant directors " in several of its allegations; but it does not appear who of the defendants are directors elected in 1869; nor how many of the directors of that year are referred to in the allegations thus made.

3. In the first and second bills it is alleged " that a majority of the present board of directors of said defendant corporation are acting in the interest of, and are under the control of, said Tompkins and Thayer." But this does not show that they are wilfully disregardful of the interests of the corporation ; or that they would so act if informed of the injurious effect of their action ; or that they would yield to the influence or control of Tompkins and Thayer, if aware of the purpose and uses for which that influence is exerted. It is not equivalent to a request and refusal of the use of the corporate name and authority for the redress of the wrongs complained of ; nor does it show that such an application, upon a suitable representation of the facts, would be unavailing.

4. The same considerations apply to the allegations in the third bill, so far as they apply to present directors. It is alleged that they " have allowed themselves to become little else than the creatures of Tompkins and Thayer, and the registers of their wishes, and have come to consider that no duty rested or now rests upon them as directors to do more or other than to make said corporation, and the property of the plaintiffs therein invested, serviceable to Tompkins and Thayer."

The phraseology of this general statement does not comport with the distinctness and certainty required of legal averments; and we do not think that any process of elimination would educe from it the proposition that the present directors of the corporation are so hostile to its interests, and to any judicial proceedings for their protection, as to make proceedings in this form necessary. The preceding allegations of undue influence, corruption, negligence, fear and fraud are only statements of the means by which those who have been directors during the period to which the allegations relate have been operated upon by the said Tompkins and Thayer, to bring them into the condition of supposed subserviency. And although "corruption" imputes fraudulent conduct on the part of all parties affected, yet those charges are applied generally to the transactions of previous years, and cannot be taken as averments that the present directors are now acting adversely to the interests of the corporation, through corruption or fraud on their part, in respect to the subject matter of these suits.

5. As this question, of the right to maintain actions in the present form, turns entirely upon the capacity to set the corporate body in motion, at the time the suits were commenced; and that capacity depends upon the relations to the corporation and the corporate interests of the directors in office at that time, the several allegations in regard to the conduct of directors in previous years, during which the transactions complained of took place, do not bear upon the point, and need not now be considered.

The plaintiffs having failed to show a necessity for resorting to this mode of proceeding, the bills cannot be maintained as they now stand, and the *Demurrers must be sustained.*

After this decision, the plaintiffs amended their bills.

The amendment to the first bill was as follows: " And the plaintiffs further say, that, ever since the year 1866 inclusive, Tompkins and Thayer have owned or controlled a majority of the stock in the defendant corporation, and have controlled the election of directors and all other proceedings at the meetings of stockholders; that, by the charter and by-laws of the said

corporation, the whole management of its affairs is intrusted to the board of directors, and a majority of the present board of directors of said corporation have been members thereof, and have constituted a majority thereof, in each year since the year 1866 inclusive; that said majority have long been, and now are, fully acquainted with the breaches of trust and frauds herein charged against Tompkins, Thayer and Faxon, and openly excuse and justify the same; and that said majority have long been, and now are, knowingly, wilfully and fraudulently in collusion with said Tompkins, Thayer and Faxon, in seeking to secure and continue the control of said corporation and its property to Tompkins and Thayer, for the private benefit of Tompkins and Thayer, and in fraud of the stockholders and the corporation; and these plaintiffs have instituted a suit in this court, concurrently herewith, against the present board, for breaches of trust by them committed in their said office, in collusion with Tompkins and Thayer, of a like nature with those herein charged against Tompkins and Faxon, and having in view the same purpose of administering the affairs of said corporation so as fraudulently to promote the private interests of Tompkins and Thayer by sacrificing the interests of the stockholders and the corporation; and a copy of the amended bill in said last named suit is hereto annexed [being the amended third bill] and the plaintiffs crave leave to refer to the same as a part of this bill."

The amendment to the second bill was as follows : " And the plaintiffs further say, that, ever since the year 1866 inclusive, Tompkins and Thayer have owned or controlled a majority of the stock in the defendant corporation, and have controlled the election of directors and all other proceedings at the meetings of stockholders; that, by the charter and by-laws of the defendant corporation, the whole management of its affairs is intrusted to the board of directors, and Prince, Hill and Faxon are now members of the board of directors of the defendant corporation; that a majority of the said present board of directors have been members thereof, and have constituted a majority thereof in each year since the year 1866 inclusive; that they have

long been, and now are, fully acquainted with the breaches of trust and frauds herein charged against Tompkins, Thayer, Faxon, Hersey, Hill and Prince, and openly justify and excuse the same; and that they have long been, and now are, knowingly, wilfully and fraudulently in collusion with Tompkins, Thayer, Faxon, Hersey, Hill and Prince, in seeking to secure and continue the control of the said corporation and its property, to Tompkins and Thayer, for the private benefit of Tompkins and Thayer, and in fraud of the stockholders and the corporation; and these plaintiffs have instituted a suit in this court, concurrently herewith, against the present board, for breaches of trust by them committed in their said office, in collusion with Tompkins and Thayer, of a like nature with those herein charged against Tompkins, Faxon, Hersey, Hill and Prince, and having in view the same purpose of administering the affairs of the corporation so as fraudulently to promote the private interests of Tompkins and Thayer by sacrificing the interests of the stockholders and the corporation; and a copy of the amended bill in said last named suit is hereto annexed [being the amended third bill] and the plaintiffs crave leave to refer to the same as a part of this bill."

The amendment to the third bill was as follows: " And the plaintiffs further say, that, ever since the year 1866 inclusive, Tompkins and Thayer have owned or controlled a majority of the stock of the defendant corporation, and have controlled the election of directors and all other proceedings at the meetings of stockholders; that, by the charter and by-laws of the defendant corporation, the whole control and management of its affairs is intrusted to the board of directors, and a majority of the present board of directors are now knowingly, wilfully and fraudulently endeavoring, in collusion with said Tompkins and Thayer, to secure and to continue the control of said corporation and its property to said Tompkins and Thayer, for the private benefit of said Tompkins and Thayer, and in fraud of the stockholders and the corporation in like manner as aforesaid; and that a majority of said board have long been and now are fully informed as to the frauds and breaches of trust herein

charged to have been committed by Tompkins and Thayer, and openly excuse and justify the same."

The defendants demurred to the bills as amended; and Tompkins and Thayer filed a motion that the plaintiffs be required to elect in which of the suits the frauds alleged to have been committed in procuring the leases to Jarrett should be heard and tried, and that the other suits, or so much thereof as charged the same frauds, be dismissed. The cases were thereupon reserved by *Wells*, J., for the determination of the full court, and were argued in March 1871.

*S. Bartlett & R. M. Morse, Jr.*, for the defendants, in support of the demurrers, cited *Foss* v. *Harbottle*, 2 Hare, 461; *Mozley* v. *Alston*, 1 Phillips, 790; *Allen* v. *Curtis*, 26 Conn. 456; *Hersey* v. *Veazie*, 24 Maine, 9; *Peabody* v. *Flint*, 6 Allen, 52; *Orr* v. *Glasgow, Airdrie & Monklands Junction Railway Co.* 6 Jur. (N. S.) 877; *Clinch* v. *Financial Co.* Law Rep. 5 Eq. 450; *Gray* v. *Lewis*, Law Rep. 8 Eq. 526; Kerr on Injunctions, 565, 567, 568, and cases cited.

*B. R. Curtis & G. O Shattuck*, (*J. B. Thayer* with them,) for the plaintiffs.

WELLS, J. Upon further argument and consideration, the court find no occasion for any material change of the opinion heretofore given in this case. It appearing, however, that the suits were in fact commenced before the annual meeting in 1869, and that all the persons then constituting the board of directors are joined as defendants in the third in order of said suits, the question in regard to that suit stands differently from what was then supposed to be the case. The directors themselves are charged with participation in the fraud upon the corporation; and, through the corporation, upon the plaintiffs. Redress is sought against the directors as well as against the other defendants. If it were necessary that proceedings should be commenced at once, in order to prevent irreparable wrong or to secure proper relief, this state of facts would alone justify the form of proceeding adopted in this case. But we do not think that such a necessity is made to appear.

The question then comes, whether, in a case which admits of delay for the purpose of attempting to correct or redress the

alleged wrong through the action of the corporation in its own behalf, such attempt must not first be made, or shown to be useless. We are inclined to hold that it must. The directors represent the corporation for the time being; but they are not the corporation. Annual meetings, even if special meetings are impracticable, secure to the corporators ample means of correcting abuses practised by their officers, so far as correction is desired by the majority, or by the corporation as a body. It is not to be presumed that the body of the corporators will tolerate a wrong in their elective officers, by which they are themselves defrauded. That the present board of directors sustain or participate in the wrong, and refuse to act, or prevent action in the name of the corporation, delays the initiation of proceedings for its correction or redress. But if the delay is only temporary, and does not defeat or endanger the securing of proper redress ultimately, it does not create that necessity which is the warrant for this mode of proceeding.

By the amendment to the bill it is alleged that Tompkins and Thayer, ever since the year 1866, "have owned or controlled a majority of the stock of the defendant corporation, and have controlled the election of directors and all other proceedings at the meetings of stockholders." Also that a majority of the directors "are now knowingly, wilfully and fraudulently endeavoring, in collusion with said Tompkins and Thayer, to secure and continue the control of said corporation and its property to said Tompkins and Thayer."

These allegations, admitted by the demurrer for the purposes of this decision, may be regarded as sustaining, by implication, the proposition that any attempt to secure redress through the action of the corporate body itself, or to obtain authority to proceed in the name of the corporation against the wrongdoers, would be useless. That proposition is, in effect, equivalent to an attempt so to do and a refusal by the corporation to act or to permit action in its behalf. But such a refusal would again be equivalent to an adoption by the corporation of the very acts sought to be impeached, and a confirmation of the title or right by which the supposed wrongful gains are withheld.

The defendants contend that the corporation cannot be deprived of its right to determine, in all matters not *ultra vires*, whether to impeach or to ratify transactions supposed to be prejudicial to its interests. Granting this position, it would result that in no case, as to matters *intra vires*, could a suit be maintained by individual stockholders to enforce rights or redress wrongs of the corporate body, except where the delay necessary in order to secure corporate action might defeat or endanger the attainment of appropriate relief. If, when called upon to act, the corporate body should elect to confirm the supposed wrongful transactions, or should do so indirectly by refusal to act, they would no longer be open to impeachment. If, on the other hand, it should determine to take action, it would do so in its own name and behalf; and there would be no ground of necessity for proceedings in the name of the individual corporator.

We are not prepared to say that this would not be the case in all matters to which the only objection is that they are prejudicial, or supposed to be so, to the corporate interests merely, but not illegal in themselves, and affecting all the corporators alike. Perhaps it would be so whenever the surrender of property or the release of rights, acquired by the corporation through the transactions sought to be impeached, is necessary in order to reach the proper remedy. *Great Luxembourg Railway Co.* v. *Magnay*, 25 Beav. 586. The corporation might be entitled to determine for itself exclusively whether it would retain or release property or rights thus acquired, although it thereby precluded, or rendered ineffectual, all proceedings against parties who may have made illegal or fraudulent gains out of the transactions. These questions, however, we need not at present decide.

The cases now before us involve no release of property or rights by the corporation. The alleged wrongs are not merely prejudicial to the interests of the corporation ; but are such as tend to deprive one part of the corporators of their rightful share in the fruits of the common property and business, for the advantage of others of the corporators   This inequality and

injustice is accomplished by means of the control over the corporate organization and management, which has been secured by the parties so benefited. By the amendments to the several bills it is alleged that such control has been exercised since the year 1866, inclusive, by Tompkins and Thayer, with the aid of the other defendants. That which is important is the fact of such control and its exercise for such purpose, rather than the means by which it has been obtained. A majority of the corporators have no right to exercise the control over the corporate management, which legitimately belongs to them, for the purpose of appropriating the corporate property or its avails or income to themselves or to any of the shareholders, to the exclusion or prejudice of the others. And if any have obtained such unfair advantage by fraud or abuse of the trust confided to them as officers or agents of the corporation, it is not in the power of a majority to ratify or condone the fraud and breach of trust, so far as it affects the rights of the others, without reasonable restitution. This proposition, if stated in reference to formal transactions, such as assessments of capital or dividends of income, would not be questioned. *Preston* v. *Grand Collier Dock Co.* 11 Sim. 327. *Hodgkinson* v. *National Live Stock Insurance Co.* 26 Beav. 473. But the indirect appropriation of the common property, profits or means of profit, to their own benefit, by any portion of the corporators, in fraud of their associates, is equally incapable of being authorized or ratified by the vote of a majority of the corporators, or by any act or omission of the corporate body. *Gregory* v. *Patchett,* 33 Beav. 595. *Atwool* v. *Merryweather,* Law Rep. 5 Eq. 464, note. If it were otherwise, the minority would be without means of protection or redress against inequality and injustice. They would be equally so if they could obtain redress only in the name and through the action of the corporation itself. Such acts are wrongs done primarily to the corporation; and therefore the restitution or redress is to be secured to the corporation. But in their effect and essential character they are wrongs to the individual shareholder, inflicted upon his corporate interests by means of the control over those interests secured through the corporate organization and man-

agement. He can seek his redress only through the corporation; but that does not give the corporation the right to deprive him of all redress. Any attempt to do so, whether regarded as the action of the corporation or of a majority of shareholders, would have the same voidable character as the original wrong. Officers of a corporation, dealing with it in matters of their own individual interest, stand very differently in this respect from strangers, who have no occasion to regard any other than the corporate body. If by means of their relations to the corporate management they secure to themselves undue advantage over their associates, they cannot retain it. Such transactions are voidable, not merely for want of authority in the officers by whom they are done, but because neither the officers nor the corporation itself, by whatever majority of votes it may act, can do, assent to, or confirm them. The wrong to the individual shareholder is the same, whether committed with the concurrence or subsequent approval and adoption of his associates controlling the corporation, or without it.

In our opinion, the facts of these cases, as set forth in the several amended bills, show such abuse of authority and breaches of trust by the defendants, in misappropriating the income of the corporate property to the benefit of themselves or of some of them, as cannot be ratified or remitted by the corporation; and also such incapacity of the plaintiffs to move the corporation to take action for their redress, as entitles them, from necessity, to seek it in the form of these proceedings.

In the first and second of the bills a majority of the present directors are not joined as parties; but the necessity for the mode of proceeding adopted is shown by the allegations that Tompkins and Thayer own or control a majority of the stock and control all meetings of the corporation, and that a majority of the present directors are knowingly, wilfully and fraudulently endeavoring to continue and secure such control to them.

In support of these conclusions we may cite *Atwool* v. *Merryweather*, Law Rep. 5 Eq. 464, note; *Hichens* v. *Cosgreve*, 4 Russ. 562; *Gregory* v. *Patchett*, 33 Beav. 595; *Hodges* v. *New England Screw Co.* 1 R. I. 312; *Allen* v. *Curtis*, 26 Conn. 456

*Hersey* v. *Veazie,* 24 Maine, 9; *March* v. *Eastern Railroad Co.* 40 N. H. 548, 567; *Robinson* v. *Smith,* 3 Paige, 222, 233; *Peabody* v. *Flint,* 6 Allen, 52.

We do not think the authorities cited in support of the demurrers are in conflict with these positions. The leading case relied on, *Foss* v. *Harbottle,* 2 Hare, 461, was a bill to set aside a sale of property to the corporation. It was dismissed because it did not exclude the supposition that the proprietors might lawfully confirm the transaction; nor show that all means had been resorted to and found ineffectual to set the corporate body in motion, or that such efforts would have been useless. It involved, of course, a surrender of the property by the corporation. The vice chancellor, Sir James Wigram, in his opinion, p. 492, remarks as follows: " If a case should arise of injury to a corporation by some of its members, for which no adequate remedy remained, except that of a suit by individual corporators in their private characters, and asking in such character the protection of those rights, to which in their corporate character they were entitled, I cannot think that the principle so forcibly laid down by Lord Cottenham in *Wallworth* v. *Holt,* 4 Myl. & Cr. 619, 635, and other cases, would apply; and the claims of justice would be found superior to any difficulties arising out of technical rules respecting the mode in which corporations are required to sue."

The defendants object to the second and third bills as being multifarious; and also that each embraces the whole subject matter of that which precedes it in order. They ask that the plaintiffs be required to elect which of said bills they will prosecute, and that they be restricted to one only.

Both positions, although apparently inconsistent, stand upon the same misconception of the purport of the plaintiffs' allegations. The bills are somewhat obscurely drawn; but as we understand the purpose of the pleader, from their construction, the recitals, in the second and third bills, of the facts charged in the preceding, are not made as setting forth the ground of action; and no relief is sought on account thereof. They are recitals merely, setting forth the relations of the parties and the

circumstances tending to show a previous fraudulent combination between them, with which they entered upon and carried through the subsequent transactions which are made the ground of action.

The cause of action, and that for which alone relief is sought, in the first suit, is the illicit gains derived by Tompkins from his secret interest in the two leases to Jarrett, in violation of his trust as director, and shared in by Thayer and Faxon, the other defendants, in fraud of the corporation.

The second sets forth like gains, derived from the lease to Booth and Clarke, by Tompkins and Thayer, by the aid and fraudulent collusion of the other defendants as directors.

The third sets forth like gains, derived from the three leases of 1866, 1867 and 1868 to Junius B. Booth, by Tompkins and Thayer; Booth being also joined as defendant. The other defendants are all charged with aiding and fraudulently colluding in the misappropriation of the property and income of the corporation, for the benefit of Tompkins and Thayer.

These are three distinct causes of action; and could not be joined without being obnoxious to the objection of multifariousness. We think they are not brought together in either bill. Separately neither is multifarious, upon its face. The third may prove to be so, if the allegations of fraudulent collusion and aid should be established against none but directors; Hersey having been director only in the years 1866 and 1867, and Faxon only in 1868. But each is charged with fraudulent participation during the years when not a director; and upon demurrer each must be held equally liable for the whole period covered by the charges of the bill.

It is unnecessary, in this connection, to consider whether the relief sought is to be based upon the fraudulent gains of Tompkins and Thayer, or upon the loss to the corporation by means of the improper mode in which the leases have been made and the property of the corporation managed. The question is whether the plaintiffs are entitled to any remedy, and not as to its form or extent.

Another objection is, that in the first and second suits the lessees of the property, who confederated with Tompkins to defraud the corporation, and who shared in the profits, are not joined as defendants. If the suit is merely to recover the amount of profits received by Tompkins, Thayer and Faxon, and to require them to account therefor, as trustees for the corporation, the lessees have no interest in that question, and are not necessary parties to enable the court to render full relief, to the extent of what has thus been received by the defendants. The plaintiffs may not in that mode reach a remedy coextensive with the loss to the corporation.

If the redress sought is the loss or damages to the corporation, occasioned by the fraudulent conduct of the defendants, in relation to its property, the only questions are whether the defendants are guilty of the tort, and what damage has been suffered in consequence. The lessees are not necessary parties, either to the inquiry or to the judgment. Neither equity nor law is solicitous in regard to contribution between tortfeasors. *Walker* v. *Symonds,* 3 Swanst. 1, 75. *Wilson* v. *Moore,* 1 Myl. & K. 127.

It is also objected that the allegations, that a majority of the present board of directors are wilfully and fraudulently in collusion with Tompkins and Thayer, are traversable, and therefore that the directors so charged should be named and made parties defendant. But no injunction or other relief is sought against them. They are not to be affected by any decree, otherwise than as general stockholders. Their action is not necessary to the execution of any decree sought in these cases. The allegations are made, not as a ground of action, but merely as laying the foundation for resort to this form of proceeding. They cannot be necessary parties therefore in any sense, or for any purpose.

The necessity of seeking the remedy through and in behalf of the corporation, and therefore of making it a party defendant, is a sufficient answer to the objection that there is an adequate remedy at law.

Upon the whole case, we are satisfied that all three bills are maintainable upon the allegations they severally contain.

*Demurrers and motion overruled.*