FRANK ENOS & others *vs.* CHURCH OF ST. JOHN THE BAPTIST (first defendant by amendment) & others.

Bristol.    October 24, 1904. — November 22, 1904.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Equity Jurisdiction,* Suit by member to restrain corporation. *Religious . Society,* Powers of trustees, Corporate powers.

If a bill in equity by a member of a corporation, to restrain the corporation from doing certain acts, does not allege that the plaintiff sought redress from the corporation itself or its officers before resorting to the courts, but the bill is not demurred to, and a master subsequently finds that if such an application had

been made it would have been unavailing, the bill will not be dismissed on this ground.

The trustees of a Roman Catholic church organized under Pub. Sts. c. 38, §§ 48–50 (R. L. c. 36, §§ 44–46) have complete control of the corporate doings, and no other communicant or member of the corporation or of the parish can take part in the corporate action.

It is within the power of a religious society organized under our statutes to devote its general funds to the aid of other churches or religious societies or to home or foreign missions. Thus it is within the general scope of the corporate powers of a Roman Catholic church organized under Pub. Sts. c. 38, § 48, (R. L. c. 36, § 44,) to transfer a part of its funds to a new parish set off from itself.

BILL IN EQUITY, filed as amended July 31, 1903.

The Superior Court made a final decree dismissing the bill with costs as stated in the opinion ; and the plaintiffs appealed.

*R. F. Raymond*, ( *C. Mitchell* with him,) for the plaintiffs.

*C. W. Clifford*, for the defendants.

BARKER, J. The plaintiffs are thirteen members of the Roman Catholic church, identified in the matter of attendance upon divine worship, the ceremonies of the church and church discipline, with the body of Roman Catholic priests and laymen commonly called the Church of St. John the Baptist in New Bedford. They bring the bill in behalf of themselves and all others having like ground of complaint. The issues raised by the pleadings have been heard by a master under a rule requiring him to find and report the facts. No exceptions were taken to the report, and the court below having entered a final decree dismissing the bill with costs to the defendants, the cause is before us upon the plaintiffs' appeal from that decree.

The principal defendant is a corporation formed on June 4, 1888, under the provisions of Pub. Sts. c. 38, §§ 48, 49, 50, with the corporate name of " The Corporation of the Church of St. John the Baptist in New Bedford." The defendants Harkins, Doran, Neves, Pitta and Rogers are members of that corporation. The other two defendants are banks holding on deposit funds of the corporation. The defendant Harkins is the Roman Catholic bishop of the diocese of Providence within the terri-torial limits of which diocese New Bedford is situated. The defendant Doran is vicar general of the diocese. The defendant Neves is the pastor of the Church of St. John the Baptist. The defendants Pitta and Rogers are laymen and communicants of that church. The five persons last mentioned are the trustees of the corporation and Neves is the treasurer.

The alleged ground of complaint is that the corporation is about to pay over and transfer a part of the funds now held by the corporation to the parish of Our Lady of Mount Carmel, a recently created Roman Catholic parish in New Bedford. This separate parish was constituted on September 5, 1902, by the bishop, acting in conformity with the usages and law of the Roman Catholic church, by dividing the parish of St. John the Baptist, and setting off therefrom, as the parish of Our Lady of Mount Carmel, all the Roman Catholics in New Bedford speaking the Portuguese language as their mother tongue and residing in New Bedford south of a certain line.

The bill as first amended alleged in substance that the whole fund was one accumulated by the Church of St. John the Baptist, by the gifts and donations of its members and communicants, and the gifts, bequests and donations of other friends of the church, for the purpose of erecting a new and enlarged church edifice in and for the parish and Church of St. John the Baptist, which fund is held by the trustees of the corporation but in trust for the Church of St. John the Baptist; and that the proposed transfer and payment of a part of the fund would be contrary to the express object for which the fund was given and would be an unlawful and unauthorized disposition of the fund. By another amendment the plaintiffs allege in substance that certain further funds derived from pew rents and various other sources have been received by the trustees and are held by them by virtue of their office, and have been mingled by them with the funds referred to as having been paid for the specific purpose of building a new church edifice for the parish of St. John the Baptist, and that all of the funds, though subject to the power and control of the trustees, are nevertheless in trust for the Church of St. John the Baptist. Besides the prayer for an injunction forbidding the proposed transfer, the plaintiffs ask for a decree that all of the funds belong to the corporation of the Church of St. John the Baptist in New Bedford, and that they can be used only for the purposes of the Church of St. John the Baptist.

It appears from the master's report that while the corporation has received moneys which the donors raised or gave for the express purpose of building a new church edifice, yet if

that part of the fund which is due to moneys so raised or given is subject to a trust for that specific purpose, the proposed payment to the new parish will not affect such trust fund but will leave it intact.   This state of the facts would require a decree for the defendants but for the last amendment to the bill.

Under that amendment the plaintiffs now contend that the fund " can only be used for the purposes of the Church of Saint John the Baptist," apparently meaning by this expression, which is the substance of one of the prayers of their bill as finally amended, the plaintiffs and all other Roman Catholics of New Bedford speaking the Portuguese language as their mother tongue, and not living in the territorial limits of the new parish of Our Lady of Mount Carmel, regarded as a church distinct from all other churches.   In support of this contention they make the claim that the five individual defendants who hold office as trustees of the corporation are not its only members, but that the plaintiffs themselves and all other like communicants identified with religious worship at the Church of St. John the Baptist are such members, and that the trustees are merely the governing body of the corporation.

While the bill does not show that the plaintiffs, before resorting to the courts, sought redress from the corporation itself or from its officers, the bill was not demurred to; and the master finds that if such application had been made it would have been unavailing.   See *Dunphy* v. *Traveller Newspaper Association,* 146 Mass. 495.

The master also finds that upon the division of the parish the bishop determined that a division of the property held by the corporation should be made, and ordered that such division should be made by directing the treasurer of the corporation to pay out of its funds to the new parish the amount of the proposed payment; that following this order a meeting of the trustees was called, at which three of the trustees, the pastor and the two laymen, in the absence of the bishop and the vicar general the two other trustees, voted that it was the sense of the board that it would be unjust and unwise to give any of the moneys to the new parish; that subsequently, on March 20, 1903, at a new meeting attended by all the trustees, the vote authorizing and directing the proposed payment was passed by a

majority of the trustees, the bishop, the vicar general and one layman voting in the affirmative and the pastor and the other layman in the negative ; and that by the canonical law the pastor, or any one of the plaintiffs or any member of the parish had a right of appeal from the action of the bishop to superior tribunals of the Roman Catholic church, and that no such appeal has been instituted. The failure to institute such an appeal not having been made a ground of defence to the bill, we have no occasion to consider whether a defence could be founded upon the failure to institute or prosecute an appeal.

It is to be noticed that except as to the proposed payment the plaintiffs' contentions raise moot questions only, there being no allegation or finding of any intention on the part of the corporation to dispose of any other portion of its property in any way which would be contrary to the plaintiffs' view of its duty.

We do not find it necessary to determine whether the plaintiffs are in any sense members of the corporation. It is plain that under the provisions of Pub. Sts. c. 38, §§ 48–50, and of R. L. c. 36, §§ 44–46, now in force, no persons but the trustees have any part or voice in the corporate doings. A vote duly passed by the trustees is a vote of the corporation. No other communicant or member of the congregation or of the parish can take part in the corporate action. The vote at the earlier of the two meetings called to consider the proposed payment did no more than to express the feeling of the board at that time, and the formal direction to the treasurer to make the payment given by the vote passed at the later meeting, must stand as the final and authoritative action of the corporation upon the subject.

We find nothing in the master's report to justify a finding that, aside at least from moneys raised or given for the specific purpose of building a new church edifice, the funds now in the hands of the corporation have been so raised or are so held as to place any limitation upon their application beyond that which attaches to the general funds of any religious society. The only remaining question, therefore, is whether the purpose to which the corporation in due form has decided to apply its property by the proposed payment is one within the general scope of the corporate powers of an incorporated Roman Catholic church.

Of this we have no doubt. The master's report shows that the

purpose is one consonant with the usages of that church in this country.   There can be no question that it is within the power of any religious society to devote its general funds to the aid of other churches or religious societies or to home or foreign missions.

*Decree affirmed.*