RALPH S. BARTLETT & another, trustees, *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY & others.

Suffolk.     March 19, 1915. — July 3, 1915.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Jurisdiction,* Suit by stockholder of corporation to procure enforcement of liability of directors. *Corporation,* Liability of directors.

A suit in equity by a stockholder in a corporation alleged to be brought in behalf of himself and all other stockholders who desire to join, to compel the enforcement by the corporation of the liabilities to it of some of its present and former directors by reason of alleged negligence and misconduct in the management of the affairs of the corporation whereby great losses have been incurred, cannot be maintained without alleging and proving a reasonable application to the directors of the corporation to institute proceedings to recover the losses referred to or alleging and proving facts which show that such an application would have been useless.

*It seems,* that, if such an application to the directors fails or would be useless, the aggrieved stockholder must resort to the stockholders and make an honest attempt to convince them that action ought to be instituted, unless there is an adequate reason for not doing this.

In a suit in equity by stockholders in a railroad corporation to compel the enforcement by the corporation of the liabilities to it of some of its present and former directors by reason of alleged negligence and misconduct in the management of the affairs of the corporation whereby great losses had been sustained, where the allegations of the bill set forth no facts showing that the plaintiffs before filing their bill had made any genuine and substantial effort to induce action by the directors with a real purpose of bringing about that result, and there was no allegation of any attempt to bring the wrongs of which complaint was made to the attention of the stockholders, and where, as an attempted excuse for the failure of the plaintiffs to move the directors to action in behalf of the corporation, it was alleged that the directors of the defendant were twenty-three in number, that ten of the individual defendants "are still directors of said corporation and influential in its councils. Said defendants and other directors closely associated and affiliated in financial matters constitute a majority of the board of directors and control the action and policy of the corporation," it was *held,* upon demurrer, that the bill contained no allegation of facts showing that a demand upon the directors for action would have been useless, and on that ground the demurrer was sustained.

RUGG, C. J.  This is a suit in equity brought by certain stockholders in the defendant corporation, in behalf of themselves and all other stockholders who desire to join, to enforce liabilities which are alleged to have accrued in its favor against some of its

present and former directors.*   The defendants are the New
York, New Haven, and Hartford Railroad Company, hereafter
referred to as the corporation, certain individuals who either now
are or have been directors of the corporation, and the personal
representatives of certain deceased directors.   The grounds upon
which this liability is alleged to rest are negligence of the direc-
tors of the corporation in its management, whereby purchases
of street railway companies, steamboat lines and railroads at
prices vastly in excess of their real value have been made with
the moneys of the defendant corporation, and the investment of
large sums in ventures *ultra vires* the defendant corporation, and
the establishment of a monopoly in contravention of the Sherman
anti-trust act, all through the misconduct of these directors, to
the great loss of the corporation.

A stockholder of a corporation has no personal right of action
against directors who have defrauded it and thus affected the
value of his stock.   Such wrongs are against the corporation itself
and, except through that, have no relation to the stockholder.
It is the corporation alone whose interests are directly con-
cerned, whose rights are to be asserted, and to whose exclusive
use the judgment, if recovered, must be paid.   *Converse* v. *United
Shoe Machinery Co.* 185 Mass. 422; *S. C.* 209 Mass. 539.   The
averments of the first paragraph of the bill, while not specific
in this respect, when read in conjunction with other averments
and especially with the fourth prayer, are that the plaintiffs
bring the bill entirely for the benefit of the corporation and not
in their own interest except as indirectly they may profit by
having money wrongfully taken from it restored to the
corporation.†

---

* The case was reserved by *Carroll,* J., for determination by the full court.

† The averments of the first paragraph of the bill were as follows: "The
plaintiffs . . . bring this suit in order to enforce certain liabilities which they
are informed and believe have accrued in favor of the corporation against
certain of its present and former directors, which claims said directors and
the corporation have hitherto failed and neglected and now decline to prose-
cute.   They bring suit in behalf of all the stockholders of said corporation
who may desire to join therein and become parties thereto."

The fourth prayer of the bill was as follows: "4. That upon hearing an
account be taken of the amount or amounts legally due from the defendants

Demurrers have been filed founded on the omission of the plaintiffs to aver that the directors have failed to act after a reasonable demand made upon them to act, or that such a demand would have been useless.

A stockholder, before he can proceed in his own name but in behalf of the corporation for the redress of wrongs done to it, must establish that he has exhausted all available means to obtain relief through the corporation itself, unless the circumstances excuse him from so doing. That is a condition precedent. Facts showing that he has complied with this condition must be set forth in unmistakable terms in his bill. He must make an earnest and sincere and not a feigned or simulated effort to induce the managing officers of the corporation to take remedial action in its name. If he fails in this quarter, unless there is adequate reason to the contrary, he must resort to the stockholders and make an honest attempt to convince them that action ought to be instituted. Directors and the majority of stockholders are presumed to be acting, not fraudulently, but with fair discretion in obedience to law, and in good faith toward all concerned, and with a consciousness of duty toward the corporation and all its stockholders. It is an implied condition of becoming a stockholder in a corporation that its general policy shall be determined by the holders of a majority of the stock and that disagreements as to its dominating policy and as to the details of its management shall be settled by the stockholders, and that recourse cannot be had to the courts to adjust difficulties of this sort. It is only from actual necessity, in order to prevent a failure of justice, that a suit in equity for the benefit of the corporation can be maintained by a stockholder. As was said in *Dunphy* v. *Traveller Newspaper Association,* 146 Mass. 495, at pages 496, 497: "Courts of equity are swift to protect helpless minorities of stockholders of corporations from the oppression and fraud of majorities. But the legal relations into which the members of a corporation enter require them to seek redress for supposed wrongs done them as stockholders from its officers, and from the corporation itself, before applying elsewhere." *Hawes* v. *Oakland,* 104 U. S. 450. *Wathen*

or each or any of them to the corporation defendant, and that a decree be entered ordering and requiring the payment to the corporation of the amount or amounts thus found due."

v. *Jackson Oil & Refining Co.* 235 U. S. 635, 639. The same principle is applied to unincorporated organizations and beneficiary corporations. *Hickey* v. *Baine*, 195 Mass. 446. *Correia* v. *Portuguese Fraternity*, 218 Mass. 305, 309.

The allegations of the bill upon this point are that the plaintiffs have caused to be sent to each of the directors now in office a letter touching some of the wrongs complained of and asking for notice of their decision respecting it. It is alleged that there are twenty-three directors, two living in Pennsylvania, one in Rhode Island, three in New York, four in different parts of Massachusetts, and thirteen in various cities and towns in Connecticut. The letter was mailed in Boston on Friday, July 10, 1914. The bill was filed in court a week later, on Friday, July 17, 1914. Although it is not alleged how the letter was directed, the most that can be assumed is that it reached each of the directors on the following day, Saturday. Only five business days thereafter intervened before the bill was filed. It requires no discussion to show that such notice and request, even if sufficient in form, was entirely too short in time for any practical purpose. A meeting of a board so large, composed of members whose residences are so widely separated as these, hardly could have been held, unless previously called, much, if any, before the suit was brought. The magnitude of the claims made, the length of time during which it is alleged that the wrongs to the corporation were perpetrated, and the intricacy of the separate transactions and the subterfuges alleged to have been resorted to by the guilty directors in their efforts to conceal the true nature of their conduct, all as set forth in the bill, manifestly rendered it impossible for any board of directors, however honest and alert, to make even a superficial examination of the matters set forth in the letter. The letter in direct words suggests an investigation as to "suspicious circumstances" which "may disclose proof of fraudulent participation by directors in secret and illegal profits, or other forms of fraudulent maladministration." By fair implication it suggests other investigations, which even with the utmost expedition could not have been completed except after the lapse of some time. Moreover, the letter invites from the directors "notice of your decision as to compliance" with the letter. A bald acknowledgment of the receipt of such a letter scarcely could have been

reasonably expected, — certainly no notice of collective decision as to a course of action to be pursued regarding its subject matter, — before the suit actually was instituted. The bill does not allege that no action was taken by the directors in response to the letter, nor that no answer was received by the writers. It is quite consistent with all its allegations that a meeting of the directors was held, notwithstanding the shortness of time, at which the letter was referred to competent counsel and notice thereof sent to the writers of the letter. An affidavit pretty nearly to that effect, printed in the record, is not attached to nor referred to in the bill, but was filed later, and hence cannot be treated as rightly before us: but the existence of such facts is not at all incompatible with the bill. It is not necessary to consider whether the letter contained sufficient information and was a demand adequate in form to be the basis of an individual suit by a stockholder. Making all assumptions in its favor, it is too plain for further discussion that the plaintiffs do not allege any facts which show that they have made a genuine and substantial effort to induce action by the directors with a real purpose to bring about that result before filing their bill. There is no ground for the argument that the bill shows reason for haste. The record is bare of any facts indicating that the rights of the plaintiffs or of the corporation would have been adversely affected by waiting a reasonable time to afford the directors opportunity either to institute proceedings or to refuse to do so. The statement of the bill that "the plaintiffs aver upon belief that the present board of directors will not cause the defendant corporation to institute action against some of their own members, or cause proceedings to be prosecuted as the interests of the corporation itself require," is an unavailing allegation unless supported by facts showing adequate foundation for such belief. There are no such facts set out in this bill.

There is no allegation of any attempt to bring the wrongs of which complaint is made to the attention of the stockholders.

A bill may be maintained by a stockholder in behalf of the corporation to redress wrongs done to it without making any demand upon the directors or upon the stockholders to cause the corporation itself to institute proceedings, provided it appears by appropriate allegations that that would have been an idle ceremony. The law in this regard is settled. The allegations of the bill must

be certain and unmistakable in setting forth facts which show that it would have been useless to ask the directors or the corporation to act. Generalities unaccompanied by specific and definite facts are not enough. The sufficiency of the present bill in this regard best may be tested by comparison with the leading case, *Brewer* v. *Boston Theatre,* 104 Mass. 378, a case similar in all essential respects. That was a bill in equity by minority stockholders brought to recover for frauds perpetrated by directors against the corporation. It was alleged that three of the directors, who were defendants, were still members of the board of directors which consisted of seven, and "that a majority of the present board of directors of said defendant corporation are acting in the interest of, and are under the control of," the two former directors responsible for the frauds; and further, that the present directors "have allowed themselves to become little else than the creatures" of the corrupt directors "and the registers of their wishes, and have come to consider that no duty rested or now rests upon them as directors to do more or other than to make said corporation, and the property of the plaintiffs therein invested, serviceable to" the corrupt directors. This statement of facts was accompanied by allegations of "undue influence, corruption, negligence, fear and fraud" exercised by the guilty directors during the period of their unlawful transactions. It was held that these allegations were not sufficient for the reason that the defendant directors were a minority of the board as then constituted, and that it did not appear that the majority were "wilfully disregardful of the interests of the corporation" and that the allegations were not equivalent to "a request and refusal of the use of the corporate name and authority for the redress of the wrongs complained of," nor do they "show that such an application, upon a suitable representation of the facts, would be unavailing." 104 Mass. 388. After the first decision in *Brewer* v. *Boston Theatre,* from which quotations have been made, the bill in that case was amended to the extent of averring that a majority of the board of directors were fully cognizant of all the breaches of trusts and frauds committed by the faithless directors upon the corporation and openly excused and justified the same, and had been and "are now knowingly, wilfully and fraudulently endeavoring, in collusion with" such faithless directors "to secure and continue the control of the said

corporation and its property" for the private benefit of the faithless directors, "and in fraud of the stockholders and the corporation." These allegations were held sufficient to authorize a single stockholder to proceed. 104 Mass. 391, 393.

Brewer v. Boston Theatre, 104 Mass. 378, always has been recognized as a leading and authoritative decision. It is exhaustive in its discussion. There has been no relaxation of the rule there laid down. On the contrary it has been strictly adhered to. It was followed in Dunphy v. Traveller Newspaper Association, 146 Mass. 495. In that case it was not alleged that the individual stockholder had attempted to move the directors to action in behalf of the corporation, but as excuse for this failure it was averred that one of the directors was president and treasurer of the corporation and was and had been for a long time the owner or controller of a majority of shares of its capital stock, and had improperly managed the corporation and wrongfully received to his own benefit large amounts of its money for salary and rent. There was no allegation of fraud, or of wrongful combination by this director with any others, or misconduct on the part of any of the others. It was held that it could not be presumed, in the absence of such averments, that the directors would refuse to do their duty in behalf of the corporation if they were asked to do so. To the same effect are Doherty v. Mercantile Trust Co. 184 Mass. 590, Enos v. Church of St. John the Baptist, 187 Mass. 40, 43, Young v. Haviland, 215 Mass. 120, 123, Von Arnim v. American Tube Works, 188 Mass. 515, 517, Wineburgh v. United States Steam & Street Railway Advertising Co. 173 Mass. 60, 62, Richardson v. Clinton Wall Trunk Manuf. Co. 181 Mass. 580. The record in Hill v. Murphy, 212 Mass. 1, which was said to be "somewhat meagre," showed far more effort to move the directors to action than is disclosed in the case at bar. Hawes v. Oakland, 104 U. S. 450. Quincy v. Steel, 120 U. S. 241, 247. Doctor v. Harrington, 196 U. S. 579, 588.

The present bill is like the bill in Brewer v. Boston Theatre, which was held insufficient, and is singularly unlike the amended bill, which there was held sufficient. The present bill avers that ten individual defendants "are still directors of said corporation and influential in its councils. Said defendants and other directors closely associated and affiliated in financial matters constitute a majority of the board of directors and control the action and policy

of the corporation." This is far from an averment that the ten defendant directors who have perpetrated the alleged wrongs against the corporation are in corrupt confederation with others of their associates in numbers sufficient to control the action of the board. Much less is it an averment that the thirteen directors (other than those named as defendants), two of whom are alleged to have been directors since 1910, three since 1911, and the rest since 1913, are in collusion with the faithless directors. Thirteen out of the twenty-three directors are not alleged to have been guilty of any wrongful acts toward the corporation, nor are any facts averred to "show that they are wilfully disregardful of the interests of the corporation" or that they "would yield to the influence or control" of those who have been guilty of negligence or *ultra vires* acts, if aware of the purposes to which that influence and control is exerted. The extent of the relation of any of the directors to those upon whom it is sought to fasten liability is that certain unnamed "other directors" are "closely associated and affiliated in financial matters" with them. This averment would be satisfied by the fact that they are together on a board of directors of a corporation involving financial interests of the magnitude of those vested in the New York, New Haven, and Hartford Railroad. Such service may constitute close association and affiliation in financial matters. There is nothing sinister or corrupt in the single fact of association or affiliation in financial matters. There must be some further fact before there is anything wrong about it. "Affiliation . . . in the same church" with a party to an action is no disqualification to a juror. *Searle* v. *Roman Catholic Bishop of Springfield,* 203 Mass. 493, 498. Service upon the same board of directors does not of itself make honest men truckle to the dominating influence of a corrupt minority merely by reason of being thus "closely associated and affiliated in financial matters." It is not the equivalent of saying that the majority refuses to act in the interests of the corporation by reason of tainted subserviency, or that it endeavors intentionally and intelligently to screen the guilty directors from their just responsibility to the corporation or that otherwise it is faithless to the trust resting upon directors. Allegations of this nature are wholly absent from the present bill. Unless *Brewer* v. *Boston Theatre* is overruled, plainly this bill cannot be maintained on its present allegations. This case is indistinguish-

able from that. In its material averments in this respect the bill at bar is like that there held fatally defective, and omits those there held essential. The allegations of the paragraph to the effect that the guilty directors with other directors closely associated and affiliated in financial matters with them constitute a majority of the board and control the action and policy of the corporation, are not rendered sufficient by regarding them as supplemented by the averments of a preceding paragraph, in substance that the information contained in the official investigations and decisions, and all the records and accounts of the defendant corporation and its subsidiaries have been open and accessible to the directors, and that it was their duty within a reasonable time to cause to be instituted appropriate proceedings for the recovery of the sums for which the individual defendants and the estates of deceased directors are liable to the corporation, and that the "extent of the actual knowledge" which has come to the present directors is "unknown to the plaintiffs." Although this allegation is directed to a different proposition and is not pleaded in support of excuse for failure to move the directors to action, yet, if all the averments are combined, they fail to show any excuse for failure to give the directors reasonable time to act after the application, before instituting the present suit.

This rule of law, recognized forty-five years ago after full consideration in *Brewer* v. *Boston Theatre*, 104 Mass. 378, has been steadily followed here and prevails generally. See 10 Cyc. 966, 967, for a collection of cases. It is not a technical rule of pleading, but one of substantive right. If the majority of the board of directors of a corporation are incorruptible, free from collusion with wrongdoers, and ready to act for the best interests of the corporation, there is no reason why an individual stockholder should be permitted to involve the corporation in lawsuits. As was said by Knowlton, J., in *Dunphy* v. *Traveller Newspaper Association*, 146 Mass. 495, 497: "It would be contrary to the fundamental principles of corporate organization to hold that a single shareholder can at any time launch the corporation into litigation to obtain from another what he deems to be due to it, or to prevent methods of management which he thinks unwise." Unless a plaintiff in equity is ready to state in court that he knows or that he is informed and believes and therefore avers the truth of the essential facts re-

specting the directors which show either that they have refused to act when asked to act or that it would be useless to make application to them, there is no reason why litigation should be undertaken by him for its benefit. The circumstance that there are general allegations that vast sums of money have been lost to the defendant corporation can make no difference in application of the governing principles of law.

It follows that the bill is fatally defective in this respect and the demurrers must be sustained on this ground. It is unnecessary at this time to consider any of the other numerous questions raised at the argument. Let the order be, demurrers sustained on the ground that the bill does not allege reasonable application to directors to institute proceedings to recover losses referred to in the bill, nor facts showing that such application would have been useless.

*So ordered.*

*S. L. Whipple, W. R. Sears & A. Lincoln,* (*E. H. Abbot, Jr.,* with them,) for the plaintiffs.

*J. L. Thorndike,* (*R. G. Dodge* with him,) for the New York, New Haven, and Hartford Railroad Company.

*F. H. Nash,* (*C. F. Choate, Jr.,* with him,) for the defendants Mellen and Pratt.

*E. P. Saltonstall,* (*C. W. Blood* with him,) for the executors of the will of Amory A. Lawrence.

*C. K. Cobb,* for the defendant Cochrane.

*E. A. Whitman & R. Victor* of New York, (*E. H. Green* of New York with them,) for the defendants Skinner, Brooker and Elton.

*C. A. Hight,* for the defendant Rockefeller.

*J. B. Warner,* for the executors of the will of J. P. Morgan, submitted a brief.

*O. Ray,* for the trustee under the will of I. DeVer Warner, submitted a brief.

*C. Bassett,* for the executors of the will of Edwin Milner, submitted a brief.