MERRIMON v. PAVING COMPANY.

(Filed November 7, 1906).

*Municipal Corporations—Right of Citizen to Enjoin Corporation—Necessity for Demand—Complaint—Necessary Allegations—Fraud—Demurrer.*

1. A citizen, in his own behalf and that of all other tax-payers, may maintain a suit in the nature of a bill of equity to enjoin the governing body of a municipal corporation from transcending their lawful powers or violating their legal duties in any mode which will injuriously affect the tax-payers—such as making an unauthorized appropriation of the corporate funds, or an illegal or wrongful disposition of the corporate property, etc.

2. But the citizen cannot call upon the courts to interfere with the control of corporate property or the performance of corporate contracts, until he has first applied to the corporation, or the governing body, to take action, and they have refused, and he has exhausted all the means within his reach to obtain redress within the corporation, unless there is fraud or the threatened action is *ultra vires.*

3. In an action by a citizen against a municipal corporation to enjoin its governing authorities from making further payments on a contract with a paving company for paving the streets, on the ground that the paving company was not complying with the contract, where the complaint does not allege any demand upon the governing authorities and refusal by them to sue, and there is no charge of fraud nor any averment that any of the officers are acting in the matter "for their own interest," or that their action is "destructive of the corporation," or that they are acting "oppressively or illegally," except in that they differ in opinion from the plaintiffs in respect to the character of the work, the demurrer was properly sustained.

4. When a plaintiff intends to charge fraud, he must do so clearly and directly, by either setting forth facts which in law constitute fraud or by charging that conduct not fraudulent in law is rendered so in fact by a corrupt or dishonest intent.

5. The request to the Mayor not to pay the amount then due was not a compliance with the rule which requires a demand upon the Board of Aldermen and a refusal by them before the citizen can sue; nor was the necessity of a demand dispensed with by reason of the fact that "there was no meeting of the Board," where it does not appear that the plaintiffs exhausted all means in their power to submit their grievances to a regular or a special meeting called for this purpose.

6. Every demurrer directed to the incapacity of the plaintiff to sue, the misjoinder of parties or causes of action, or jurisdiction, admits the facts alleged, for the purpose of the demurrer, but does call into question the merits of the case.

ACTION by B. H. Merrimon and others against Southern Paving and Construction Company and others, heard by *Judge G. S. Ferguson* at the April Term, 1906, of the Superior Court of GUILFORD, upon the demurrer to the complaint.

The plaintiffs, citizens and tax-payers of the city of Greensboro, instituted this action on 13 March, 1906, against the defendants, The Southern Paving and Construction Company, the City of Greensboro, T. A. Hunter, a member of the Board of Aldermen and Chairman of Street Committee; W. G. Potter, city engineer, and T. J. Murphy, Mayor of said city. They allege that the city of Greensboro was duly

MERRIMON *v.* PAVING COMPANY.

incorporated by an act of the General Assembly of the State. Private Laws 1901, ch. 333. That pursuant to power vested in said city of Greensboro, acting through the Mayor and Board of Aldermen, it entered into a contract, a copy of which is made a part of the complaint, with the defendant Construction Company, on 20 September, 1905, by which, upon the terms and for the prices named, the said company undertook to furnish all materials, implements, labor, and everything necessary, and perform all of the work and labor required to grade, improve and pave, complete in all respects, certain streets in said city. The specifications, plans, etc., by which the materials were to be furnished and the work to be performed were made a part of the contract. The portions of the contract material to the decision of the appeal are that the materials furnished and work done were to be inspected and approved by the city engineer, and in case of disagreement, his decision was to be final and binding upon all of the parties. Approximate estimates of the work done were to be made by the engineer, and payment made upon his approval semi-monthly; ten per cent. of each estimate to be retained until the work was completed; warrants for the amounts due upon the semi-monthly estimates to be issued by the Mayor.

The plaintiffs allege that the defendant company began the work as provided by the said contract, "but in numerous and material respects failed and neglected to perform the obligations imposed upon it by the terms of said contract and specifications, and failed and neglected to give to the city as good pavement as was called for. The complaint set out eleven respects in which the company failed to furnish good material and properly perform the work. They further allege that defendants Hunter and Potter have failed to discharge their duty in seeing to it that defendant company was complying with its contract. That on 24 November, 1905, defendant Potter, city engineer, approved an estimate, and

semi-monthly thereafter approved other estimates, upon which warrants were drawn and payments made aggregating $26,652.85. It appears from said estimates set out that 10 per cent. of the amount due was retained by the city. That said amount was about four-fifths of the entire sum to be paid on account of the contract. That the amount already paid defendant company is more than it is entitled to receive by reason of the defective character of the materials and work. That after the plaintiffs came into possession fully of the facts with respect to the manner of doing the work on Elm Street and were prepared, with information they had gathered, to establish the defects in the work herein alleged and complained of up to the time of the bringing of this action, they were informed and believe that a payment of the city's money by the defendant T. J. Murphy, Mayor, upon the certificate of the defendant W. G. Potter, city engineer, would be made unless action was taken to prevent it. That the plaintiffs had no opportunity, after this information was so obtained and collected, to lay the matter before the Board of Aldermen of the city of Greensboro, as there was no meeting of the board, and as they are advised and believe, it was unnecessary for them to do so; but they did, through their attorney, communicate with the defendant T. J. Murphy, Mayor, that there were material and serious defects in the work done by the defendant company in paving South Elm Street, and that the defendant company had already received more money than it was entitled to receive, or would be entitled to receive when it had paved the remainder of Elm Street to Church Street, which had not been paved between Lee and Church Streets, and that he ought not to make payments or issue warrants for money to the defendant company, but should withhold any further payments or warrants until an investigation was made as to what the facts were, and request further that such payments and warrants be withheld until Friday, 17 March, 1906; but the defend-

ant T. J. Murphy declined to agree to withhold the payments and showed no disposition or indications that he would make any investigation whatsoever; and on 16 March, 1906, was in the act of issuing, or had issued and afterwards recalled, a warrant of $2,626 in addition to the $26,652.85 which had already been paid to the defendant company, or to the Southern Life and Trust Company for it; and as plaintiffs are informed and believe, the defendant T. J. Murphy, Mayor, was stopped from issuing said warrant upon which said amount of $2,626 would have been paid out of the city's treasury, only by the commencement of this action and the proceedings had herein.

That the representations of the defendant company that it had done work entitling it to $26,652.85 was approved by the defendant W. G. Potter, when the same should not have been approved, and if the said Potter had complied with the obligations resting upon him in the contract hereto attached and marked Exhibit "A," he would not have so approved the said accounts and claims of the defendant company, as plaintiffs are informed and believe.

That no order, direction or warrant, or any action whatever, with respect to the acceptance of said work done by the defendant company, or any payment therefor, has been taken, made or done by the Board of Aldermen of the city of Greensboro since the contract entered into with the defendant company on 20 September, 1905, and whatever action is taken by the defendant T. J. Murphy, by the defendant T. A. Hunter, or by the defendant W. G. Potter, in approving or paying for any such work, is unauthorized except it be authorized by the terms and conditions and stipulations of the said contract.

Plaintiffs allege that it would be a fraud upon themselves and the other tax-payers of said city to permit further payments to be made to defendant company out of the funds of the city. They demand judgment that a perpetual injunction

issue against the defendant company receiving, or the other defendants paying, any money on account of the said contract, etc. Defendants demur to the complaint, and for cause of demurrer say:

"That said complaint does not state facts sufficient to constitute a cause of action against said defendants, in that it appears from said complaint that any cause of action that may arise from the breach of the contract therein mentioned on the part of the defendant, the Southern Paving and Construction Company, is vested in and accrues to, primarily, the said city of Greensboro and not in or to the plaintiffs, and it is not alleged in said complaint that plaintiffs or either of them ever requested or demanded of the governing body of the said city, to-wit, the Board of Aldermen, that they proceed to enforce said contract, and that said Board of Aldermen refused so to do. And further, that it does not appear from said complaint that said plaintiffs or either of them ever gave said Board of Aldermen to understand or be informed that the said Southern Paving and Construction Company was violating its said contract, or that defendant T. A. Hunter, chairman of the street committee, or defendant W. G. Potter, city engineer, had been guilty of dereliction of duty, and requested that said board take action in the premises, and that said board had refused so to do.

"That it is not alleged in said complaint that the city authorities and the city of Greensboro in carrying on the improvement and paving of Elm Street, pursuant to the contract therein mentioned are or have been acting fraudulently and in bad faith in allowing the variations from the contract specified in the complaint and not *bona fide* and in the exercise of the discretion vested in them by law and by the terms of said contract."

His Honor sustained the demurrer and rendered judgment dismissing the action. Plaintiffs excepted and appealed.

*J. T. Morehead* and *E. J. Justice* for the plaintiffs.

*W. P. Bynum, Jr.,* and *G. S. Ferguson, Jr.,* for the Paving Company.

*R. C. Strudwick* and *Stedman & Cooke* for the City of Greensboro.

CONNOR, J., after stating the case: The demurrer raises three questions, all of which are clearly presented in the briefs and were ably argued in this Court: 1. Does the citizen, in respect to his right to invoke the equitable powers of the Court to control the action of a municipal corporation regarding its property, occupy the same relation to the corporation as a shareholder in a private corporation, and is his right to bring such suit governed by the rules applicable to such shareholder? 2. What are the limitations upon the right of a shareholder to bring suits regarding the control of the corporate property? 3. Do the facts set out in the complaint, and for the purpose of the demurrer admitted to be true, entitle the plaintiffs to maintain the suit, under the restrictions imposed by such rules?

That a citizen, in his own behalf and that of all other taxpayers, may maintain a suit in the nature of a bill in equity to enjoin the governing body of a municipal corporation from transcending their lawful powers or violating their legal duties in any mode which will injuriously affect the taxpayers—such as making an unauthorized appropriation of the corporate funds, or an illegal or wrongful disposition of the corporate property, etc.—is well settled. Dillon Mun. Corp., 914; High on Inj., 1236, *et seq.; Carthan v. Lang,* 69 Iowa, 384; *Lodor v. McGovern,* 48 N. J. Eq., 275 (27 Am. St. Rep., 446); *Leibstein v. Mayor,* 24 N. J. Eq., 200; *Bond v. Mayor,* 19 N. J. Eq., 376; *Roper v. Laurinburg,* 90 N. C., 427. *Judge Dillon* says that the right to maintain such action is sustained by analogy to the principle applicable to the rights of shareholders in private corporations.

142—35

"In these the ultimate *cestuis que trust* are the stockholders. In municipal corporations the *cestuis que trust* are, in a substantial sense, the inhabitants embraced within their limits. In each case the corporation, or its governing body, is a trustee. If the governing body of a private corporation is acting *ultra vires* or fraudulently, the corporation is ordinarily the proper party to prevent or redress the wrong by appropriate action or suit in the name of the corporation. But if the directors will not bring such an action, our jurisprudence is not so defective as to leave creditors or shareholders remediless, and either creditors or shareholders may institute the necessary suits to protect their respective rights, making the corporation and the directors defendants. This is a necessary and wholesome doctrine. Why should a different rule apply to a municipal corporation? If the property or funds of such corporation be illegally or wrongfully interfered with, or its powers be misused, ordinarily the action to prevent or redress the wrong should be brought by and in the name of the corporation. But if the officers of the corporation are parties to the wrong, or if they will not discharge their duty, why may not any inhabitant be allowed to maintain in behalf of all similarly situated a class suit to prevent or avoid the illegal or wrongful act? Such a right is especially necessary in the case of municipal and public corporations; and if it be denied to exist, they are liable to be plundered, and the tax-payers and property-owners on whom the loss will eventually fall are without effectual remedy." Mun. Corp., 915. The author cites numerous cases showing that this most wholesome doctrine is generally recognized.

The defendants, not denying this, say that the principle upon which the right of the citizen to sue, being the same as that which entitles the shareholder to sue, must be governed by the same limitations in regard to when and under what circumstances the suit may be brought.

The plaintiffs insist that the citizen may sue without first applying to the governing body to take action. It is conceded that in some cases he may do so—just as in some cases the shareholder may.

What is the general rule as to the right of shareholders to sue in cases where the right of action primarily vests in the corporation? The subject is treated, with his usual force and with much learning, by *Mr. Justice Miller* in *Hawes v. Oakland,* 104 U. S., 450. The English and American cases are reviewed and the doctrine announced in that case has been adopted and followed by this and all other courts. The basic principle is that the corporation is a distinct entity, and not a mere copartnership composed of individuals. That by its charter certain powers are conferred upon this legal person or entity to be exercised by the board of directors and other officers and agents provided for and elected in the manner prescribed. That when contracts are made by such boards or agencies they are the acts of the corporation, and the duties assumed and rights acquired are corporate. That so long as the corporate acts are *intra vires* and the officers are in the execution or discharge of such duties exercising an honest judgment and discretion, the courts will not, except within the limitations prescribed, interfere at the suit of one or more stockholders. The reason and policy upon which these limitations are based are so just and necessary to the existence and efficient operation of corporate powers and functions that they require no vindication; certainly, nothing can be added in that regard to what is so clearly and forcibly said in *Hawes v. Oakland, supra,* and the quotations there made from opinions of other Judges. The opinion in that case became the basis of the ninety-fourth rule in equity by which the Federal courts are governed in taking jurisdiction in such cases.

In *Loder v. McGovern, supra,* the plaintiff sued in equity to enjoin the governing body of the city from paying out

funds on account of a contract made with the defendant Loder for paving streets, etc. The Court, by *Beasley, C. J.,* in an able and most satisfactory opinion, sustained the right of the plaintiff to bring the suit, but in discussing the form of the bill, said: "So we further think that it was necessary for the complainant to show distinctly in his bill that the Common Council had been called upon to perform its duty, the not doing of which formed the basis of the complaint." He further said that the averment in the bill was sufficient. We quote the above to show that in the opinion of that eminent Judge the averment was necessary. Evidently, *Judge Dillon* was of that opinion when he based the right to sue upon the same reason which entitled the stockholder to do so. The question has not been heretofore presented to or decided by this Court. It seems to us that the reason of the rule applies with equal force to the right of a citizen to sue. As said by Mr. Clark in his work on Corporations: "The will of the majority must govern, and the courts will not interfere merely because a minority of the stockholders object to the transaction and deem it injurious to the corporation" (p. 396). *Hedges v. Dam,* 72 Cal., 540 (14 Pac., 133).

So one or more citizens of a town may not, until the corporation or its governing body has refused, or for some of the reasons hereafter noted bring themselves within the exception, call upon the courts to interfere with the control of corporate property, or the performance of corporate contracts. It would be quite impossible to carry out any plan or scheme of corporate work such as paving streets, opening streets, erecting systems of water, lights or other appropriate corporate enterprises, if any citizen of his own motion and without notice to the corporate agents can enjoin the work at any stage of its progress because he did not approve it or the manner in which it was being done. It is a matter of common observation that seldom, if ever, every individual in a town or city approves either the undertaking or manner of

performance of municipal enterprises. Having become members of the corporation, with notice of its charter and governmental machinery, such citizen must, save in the excepted cases, be content to permit the will of the majority to prevail. As we shall see, his rights will be amply protected if it is shown that those who have assumed the duty fail or refuse to do so, after he has demanded the performance or otherwise brought himself within the reasonable rule prescribed by the law. Municipal corporations would find themselves embarrassed at every point of their corporate activity, unless protected by some such restraint upon suits by the citizens. Officious intermeddlers or interested competitors could easily prevent all corporate action if, without notice to the corporation or its governing body, courts entertained such suits. The contract to pave the streets was strictly within the power of the corporation. It appears to have carefully guarded the rights of the city. The engineer was made the sole arbitrator and his judgment final. Ten per cent. of his estimates are retained by the city until the work is completed. It is stipulated that even after his approval, the contractors are to be responsible for defective work. Assuming that there were defects in the work as it progressed, it does not follow necessarily that the city or its governing body was compelled to enjoin the further construction of the pavement. Many reasons occur to the mind, based upon observation and experience, which would control the sound discretion of the Mayor and Aldermen in permitting the work to go on. We know nothing of these matters save as disclosed in the record, and refer to them only to vindicate the wisdom of the law, which requires that a demand be made upon the authorities before the city is forced into litigation. Both upon reason and authority, we are of the opinion that the rule which protects private corporations from suits of this character applies to municipal corporations. Of course, as we shall see, when there is fraud or the threatened action is *ultra vires,* the rule

does not apply. *Judge Miller* in *Hawes v. Oakland, supra,* thus lays down the rule:

"We understand the doctrine to be that to enable a stockholder in a corporation to sustain in a court of equity in his own name a suit founded upon a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist, as the foundation of the suit, some action or threatened action of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter or other source of organization.

"Or such a fraudulent transaction completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation or to the interests of the other shareholders.

"Or when a board of directors, or a majority of them, are acting for their own interests, in a manner destructive of the corporation itself or of the rights of the other shareholders.

"Or where a majority of shareholders are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders and which can only be restrained by the aid of a court of equity."

This Court in a well-considered opinion by *Mr. Justice Merrimon* in *Moore v. Mining Co.,* 104 N. C., 534, cites with approval and adopts the doctrine of *Hawes v. Oakland, supra,* saying: "The right to bring and the occasion of bringing such actions, arises only when and because the proper corporate officers will not, for some improper consideration, discharge their duties as they should do. But stockholders, as such, may not bring such actions at their pleasure and have their rights, as individuals growing out of the corporation, settled and administered. * * * The case just

cited (*Hawes v. Oakland*) was afterwards cited and fully approved by the same Court in *Dimpfel v. O. & M. R. R. Co.,* 110 U. S., 202, and it was therein further held that it must appear that the plaintiffs had exhausted all the means in their power to obtain redress of their grievances, within the corporation itself." The learned Justice further says: "It is not alleged, nor does it appear in any way, that the plaintiff had ever taken steps, within the company last mentioned, to correct the grievances of which he complained, although he had known of them for years; nor does it appear that he has ever demanded and required of its officers that they take proper action to prevent them or obtain redress on account of the same."

Mr. Clark in his excellent work on Corporations, pp. 389-90, states the doctrine as laid down by *Judge Miller,* and adds: "In addition to the existence of grievances calling for equitable relief, it must appear that the complainant has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances. He must apply to the managing officers to take action in the corporate name; and if he fails with them, he must, if the matter will admit of the delay, seek to obtain action by the stockholders as a body, unless for some reason such attempt would be useless." *Brewer v. Boston Theatre,* 104 Mass., 378.

The plaintiffs earnestly insist that, conceding the full force and extent of the doctrine of *Hawes v. Oakland,* and that it applies to suits in equity by citizens and tax-payers of municipal corporations, the complaint contains allegations sufficient to entitle them to maintain the action. In *Lodor v. McGovern, supra,* while, as we have shown, the Court held the averment necessary that the Common Council had been called on and refused to bring the suit, the opinion concludes with the statement that "in view of the answer and proofs, it sufficiently appears that the Common Council was antagonistic to the plaintiffs' position, and that consequently the objection

cannot prevail on final hearing." What the answer and proofs were are not set forth in the opinion or statement of the case; hence, in that respect, we have no information to enable us to see what facts controlled the Court. In *Carthan v. Lang, supra,* the question raised by the demurrer was not presented or discussed for the obvious reason that, "It is alleged that the directors and Adams (the contractor) confederated together to defraud the district by the erection by the contractor of a house of a character inferior to the building required by the contract, and the acceptance and payment therefor by the directors. Other charges of fraud are made in the petition."

The plaintiffs do not charge fraud on the part of the engineer, the Mayor, or the Aldermen, unless the allegation, "that it would be a fraud on the plaintiffs' rights as property-owners and tax-payers for the city to make the defendant paving company further payments," is so construed. This language is hardly capable of such construction. Plaintiffs' counsel, on the argument, frankly conceded that he did not intend to charge that the city authorities were acting from corrupt or dishonest motives. The cases all hold that the jurisdictional facts must be stated "with particularity." *Mr. Justice Merrimon* in *Moore v. Mining Co., supra,* says: "It is alleged that certain officers of the company were the authors of and participants in the alleged frauds and mismanagement, and that they refused to take action. But this allegation is indefinite, unsatisfactory and evasive.    *    *    *    This is not sufficient." The plaintiffs negative the suggestion of fraud by saying that the defendants Potter, Hunter and Murphy maintain that the work is being done according to specifications of the contract. It is a fundamental rule of pleading that when a plaintiff intends to charge fraud he must do so clearly and directly, by either setting forth facts which in law constitute fraud or by charging that conduct not fraudulent in law is rendered so in fact by the corrupt or dishonest

intent with which it is done. Certainly, it cannot be contended that because of an honest difference of opinion in respect to the character of work done and materials used in paving a street, the officers whose duty it is to have and act upon their opinion are guilty of fraud. It is not so contended. We find no averment that any of the officers are acting in the matter "for their own interest," or that their action is "destructive of the corporation," or that they are acting "oppressively or illegally," except in that they differ in opinion from the plaintiffs in respect to the character of the work.

As we have seen, the action of the city authorities is *intra vires* and in accordance with the charter of the city. We conclude, therefore, that the complaint contains no averment bringing the plaintiffs, in respect to their right to bring the suit, within any of the exceptions to the general rule which requires a demand upon the corporate authorities or governing board of the corporation and refusal by them to sue. Does the complaint allege any such demand? It is conceded that no demand was made upon the Board of Aldermen. Two reasons are assigned for not doing so. The first, that they were not required to do so, we have discussed and decided by what we have heretofore said. The second, "that there was no meeting of the board." It will be noted that there is no allegation as to the time within which there was no meeting of the board. By sec. 26, ch. 333, Private Laws 1901, being the charter of the city of Greensboro, it is provided that the Board of Aldermen shall meet at stated times to be fixed at their first meeting, and "shall be as often, at least, as once in every calendar month." It is further provided that special meetings shall be called by the Mayor, or a majority of the Aldermen. A penalty of four dollars is imposed upon any Alderman for failure to attend unless good cause therefor is shown. It will be observed that the work was begun the fall of the year 1905, and from the estimates submitted

semi-monthly considerable progress was made; plaintiffs say that on 13 March, 1906, as much as four-fifths had been completed. "That about this time plaintiffs came into possession of the facts with respect to the defects in the paving," etc. In *Moore v. Mining Co., supra*, Merrimon, J., says: "It should be alleged frankly, plainly, and with particularity that the plaintiff had demanded and required of such officers that they should correct the grievances alleged and take steps to obtain redress, and that they thereupon refused to do so." It is evident from the character of the specifications made by plaintiffs in the several particulars in which the work and materials were defective, that they had knowledge thereof for some time. The allegation in that respect is far from the standard fixed by the law. They could, it would seem, have attended the monthly meeting of the board preceding the maturity of the March payment, or, if time did not permit this, call on the Mayor, and, if he refused, a majority of the Aldermen to call a special meeting. They would thus have "exhausted all the means within their reach to obtain, within the corporation, redress of their grievances," and this, all of the authorities say, must be done. The request to the Mayor not to pay the money was not, by any means, a compliance with the rule. The Mayor was, in respect to paying the money, the agent of the Board of Aldermen, as was the engineer in making the estimates and passing upon the work. Neither of these officers had any discretion or power to institute suit against the contractor. They would have incurred heavy responsibilities if, without instruction from the governing body, they committed a breach of the contract upon the request of the plaintiffs. It would be impossible to conduct the affairs of a municipal or private corporation if ministerial officers were permitted to assume the powers of the governing body. No one except the Aldermen had the power to act in the matter. If they had refused to act, after being called upon, and the plaintiffs' views in regard to the conduct

of the paving company and the character of the material and work laid before them, and demand made that they take such action as was necessary to protect the interests of the plaintiffs, tax-payers, there can be no question that the plaintiffs would have been entitled to apply to a court of equity for relief. The allegation in regard to the request to the Mayor to refuse to pay the amount then due was not a compliance with the law, and did not entitle plaintiffs to sue and enjoin the city and other defendants.

The plaintiffs say that to sustain the demurrer would be to permit the revenues to be misapplied, wasted, and "graft" to be practised. This is a misconception of the rule and its exceptions. As we understand the term, "graft" is but another name for dishonesty, corruption, fraud. If the plaintiffs will allege either of these, the Court will be swift to come to their aid and protection. So far as this complaint shows, a valid contract has been made for paving the streets of Greensboro. The plaintiffs honestly think that the paving company are not complying with their contract. Without mentioning their views and opinions to the Board of Aldermen, or alleging that they are acting improperly, or that they even know that plaintiffs think the work is not being properly done, they are sued and enjoined; the work is stopped, and a city of several thousand inhabitants thrust into a lawsuit by the action of three citizens. The result of permitting this course of procedure is manifest.

The plaintiffs say that the defendants by their demurrer admit all of the grievances set forth in the complaint. The answer is, they admit them for the purpose of the demurrer. That is, they say, assuming them *pro hac vice* to be true, plaintiffs are not the proper party to sue. They have shown no such conduct on the part of the corporation, or its governing body, as gives them a right of action or *locus standi* in a court of equity.

Every demurrer directed to the incapacity of the plaintiff
to sue, the misjoinder of parties or causes of action, or juris-
diction, admits the facts alleged, for the purpose of the
demurrer.  Any other construction of a demurrer which did
not reach the merits of the controversy would make it a vain
thing.  The doctrine, which we have discussed, is confined, of
course, to the right of citizens of municipal, or shareholders
in private, corporations to sue on account of right of action
existing in the corporation itself.  For corporate acts by the
governing board, or other officers, injurious to the citizens or
stockholders, as illustrated in numerous cases, the right of
action accrues directly to the citizen or shareholder.  Here,
whatever injury was sustained by the failure of the paving
company to perform its contract accrued to the city.  No
action at law could be brought by the citizen.  It is only in a
court of equitable jurisdiction that he may sue, and then only
by conforming to its rules of practice and procedure.  Until
his trustee has refused to protect the trust property, or has
so acted as to relieve him of the duty of demanding perform-
ance, he has no status in a court of equity.  The demurrer
does not call into question the merits of the case.  It simply
denies their right to maintain the action, in the present con-
dition of the pleadings.  If they had so desired, the Court
would have permitted an amendment if they wished to allege
compliance with the law, or, if so advised, they can put them-
selves in a position to have their grievances redressed and
their rights, as tax-payers, protected.

The suggestion of the plaintiffs that the injunction should
be continued to the hearing only applies to those cases in which
the facts constituting the cause of action are in controversy.
Here, as we have said, the demurrer goes to the right of the
plaintiffs to sue in the present condition of the record.  No
proof in the absence of allegation could remedy this fatal
defect; hence, it would be an idle thing to continue the investi-
gation to the hearing, when the plaintiffs are confronted at

the outset with this insurmountable difficulty. The general proposition in plaintiffs' brief is correct and supported by the authorities, but not applicable to this case.

Upon an examination of the entire record, we concur with his Honor in sustaining the demurrer. The judgment must be

Affirmed.