P. C. JONES ET AL. v. TOWN OF NORTH WILKESBORO.

(Filed 19 May, 1909.)

1. Injunction—Cities and Towns—Municipal Powers—Contract for Watershed—Application to Rescind Contract—Pleadings—Demurrer.

In an action for injunction against the board of commissioners of a city acquiring certain property for a watershed to supply the town with water, which is alleged in the complaint to be a nuisance, threatening the lives of the citizens if so used, a demurrer on the ground that it does not appear that plaintiffs, citizens and property owners, had applied to the municipal authorities to rescind the contract of purchase, is bad.

2. Injunction—Cities and Towns—Municipal Powers—Corruption—Water Supply—Health of Citizens—Demurrer—Answer.

It is not necessary for the complaint to allege corruption or moral turpitude on the part of a board of town commissioners in purchasing property for a watershed and waterworks to supply the citizens with water; and a demurrer to a complaint, in a suit brought by citizens and property owners to restrain such action, alleging that it would be a public nuisance and endanger the health and lives of the people, admits the truth of such matters and should be overruled. In this case the defendant was required to answer, and, upon notice, the motion for injunction to be heard before the judge having jurisdiction.

ACTION for injunctive relief, heard by *Justice, J.*, at March Term, 1909, of WILKES.

The plaintiffs allege:

1. That they are citizens and property owners of the town of North Wilkesboro, N. C., and as such are interested in the welfare of said town and its inhabitants, and have started a suit in the Superior Court of Wilkes County against the above-named defendant.

2. That an election was held by the voters of said town on the question of issuing bonds to put in a system of waterworks in said town, at an election held on the .... day of ...., 1908, in the sum of $30,000 for said waterworks, which election was declared carried.

3. That, a short time prior to said election, the Mayor and Board of Commissioners of North Wilkesboro, fearing that said bond issue would not carry, caused to be published and circulated among the voters the following circular: "To the voters of North Wilkesboro: As there seems to be quite a misunderstanding as to the position of mayor and commissioners on the waterworks question, we wish to state that each and every member of said board are in favor of the gravity system, with water brought from Brushy Mountain preferred, and are not in favor of taking water from Reddie's River. We wish to state, further, that there is not any proposition on foot to purchase the Hackett Bros. water power. J. E. Finley, J. R. Combs, R. W. Gwyn, H. O. Absher, J. D. Moore, commissioners; Oscar C. Dancy, mayor."

4. That since such election, in utter violation of their pledge, three of the above-named commissioners are attempting to close a deal with Hackett Bros., or rather with the Gordon Manufacturing and Power Company, for the purchase of said mill tract of land, with all its appurtenances, for said town, and out of the mill pond are proposing to supply a system of waterworks by pumping water with an engine, which water is to be used for drinking purposes by the inhabitants of said town.

5. That Reddie's River, which flows into Hackett's mill pond, passes through one of the most populous sections of Wilkes County, as well as many creeks and smaller tributaries that flow

into said river, and it would be utterly impossible for the town authorities to comply with sections 3045 and 3048 of the Revisal in protecting the watersheds.

6. That by reason of many families living upon the numerous watersheds for the first fifteen miles, to say nothing of the many who live beyond the fifteen-mile limit, but are upon the watersheds, it will be impossible to use this water for drinking purposes, and it will render the inhabitants of the town liable to the great scourge of typhoid fever which frequently rages to considerable extent upon the watersheds of Reddie's River, as affiant believes.

7. That several years ago typhoid fever prevailed in the town to a very considerable extent, and your affiants have heard that the doctors attributed it to the use of ice taken from Hackett's mill pond, and directed that the use of ice from said pond be stopped.

8. That not only are the watersheds on Reddie's River outside of the corporate limits of said town so thickly settled that it renders its water unfit for use, but the watersheds of said river within the corporate limits of said town, if there were no other objection, would render the use of said water dangerous to the life of the citizens.

9. That upon the watersheds within said town there are many dwelling houses, and the only drainage is into Reddie's River, and only at enormous expense to said residents of the town, or to the town itself, can this drainage be brought into the river below the mill pond.

10. That if permitted to buy this property and operate from said mill pond a system of waterworks, irreparable damage and loss will be sustained, not only by the plaintiffs, but the health and well-being of the citizens of the town will be greatly endangered.

It was further alleged that a supply of pure water could be had from the Brushy Mountains, etc., all of which was duly verified.

Plaintiffs ask that a restraining order issue, etc. Defendant demurred to the complaint, and assigned as grounds for demurrer that—

1. It does not appear that plaintiffs made application to the town or its authorities to rescind the contract for the purchase of the Hackett property.

2. That the petition, taken as a whole, does not set forth grounds sufficient to justify injunctive relief, in that (*a*) it does not show that the commissioners of said town grossly abused their discretion in making a contract for the purchase of the Hackett property; (*b*) it does nothing more than question the ability of the town to maintain a waterworks system, using the water from Reddie's River, inspecting its watershed and filtering said water, as to which the court cannot interfere.

His Honor sustained the demurrer, refused the injunction, and adjudged that plaintiffs pay the costs of the action. Plaintiffs appealed.

*W. W. Barber* for plaintiffs.
*Finley & Hendren* for defendant.

CONNOR, J. While the court does not in express terms dismiss the action, it is evident that such is the effect of the judgment. The only relief asked is that defendant be enjoined from installing the system of water supply for the people of the town, as set out in the complaint. For the purpose of disposing of this appeal, the facts set out in the complaint must be taken as true. The defendant relies upon the principle announced in *Merrimon v. Paving Co.,* 142 N. C., 539, to sustain its first ground of demurrer. That case is not in point. There the corporate authorities had made a contract with the paving company to pave the streets, and plaintiff thought that the company was not performing its contract, and that the officers, whose duty it was to compel it to do so, in accordance with its terms, were derelict in the discharge of their duty. Without applying to the governing board of the municipality to do so, they brought the action. Upon a well-settled principle and uniform line of decisions, we held that they could not maintain it without making the essential averments, showing that the authorities refused to perform their duty, or such other averments as showed that a demand was useless and would be of no avail. Here the allegation is that the municipal authorities are threatening to estab-

lish and maintain a public nuisance, endangering the health and
lives of the people.   The demurrer admits the truth of the alle-
gation.   The first cause of demurrer cannot be sustained.   The
second cause assigned involves the proposition that, unless a
gross abuse of the discretion vested in the authorities is alleged,
the court has no power to interfere.   The rule by which the
courts have been governed in the exercise of the injunctive power
is well stated by *Mr. Justice Hoke,* in *Rosenthal v. Goldsboro,*
149 N. C., 128.   There the authorities, deeming it conducive
to the public health, directed the removal of shade trees on the
street upon which plaintiff resided.   It is said in the opinion:
"The Court will not interfere with the exercise of discretionary
powers conferred upon municipal corporations for the public
welfare, unless their action should be so clearly unreasonable as
to amount to an oppressive and manifest abuse of their discre-
tion."   This is sustained by a number of authorities cited in
the opinion, and, we think, correctly marks the limitation upon
the exercise of discretionary municipal authority.   It falls short
of holding that the discretion is without any limitation.   It is
not consistent with our conceptions of a municipal government
of granted powers—certainly in the method of exercising them—
that there should be no limitation, or, at least, that when called
into question, in good faith, by those who are interested in the
result, officers may admit such allegations as are made here and
successfully maintain the position that the citizens are without
remedy.   Conceding that the rule is correctly stated in the deci-
sion cited, we think that plaintiffs' allegations bring their case
within the power of the Court to interpose.   It is not necessary
to allege corruption or moral turpitude.   It is manifest that a
municipal corporation has no legal right to establish and main-
tain a condition which creates a public nuisance, *per se*—that is,
a condition which seriously endangers the health and lives of
the people.   *Harper v. Milwaukee,* 30 Wis., 365.   The injunc-
tive power of the court will be exercised with great caution, and
only in a clear case.   We decide in this appeal that the defend-
ant was called upon to answer the allegations in the complaint.
We do not think it should be permitted to dismiss charges so
serious in their character.   It may be that, upon the filing of

an answer, the authorities can show that the conditions are not correctly stated, and that by proper precaution the proposed water supply is either not impure or that by proper methods it can be purified. Of course, the Court could not undertake to direct the method of supplying the town with water. As the case is before us only upon demurrer, we forbear discussing the question further than is necessary to dispose of the exception to his Honor's judgment. The defendant will file such answer as it may be advised, and upon notice the motion for an injunction will be heard before the judge having jurisdiction in the premises.

There is

Error.

HOKE, J., dissenting: I differ from the Court in the disposition made of the present case. While there are allegations in the complaint which seemingly tend to show that a public nuisance will be created if defendant is allowed to proceed, a perusal of the entire complaint will disclose that such allegations rest necessarily in surmise, and are not in reality stated as facts, but deductions made by plaintiff from certain recognized and admitted physical conditions, and that the real controversy presented is a difference between the governing authorities of the town and certain citizens therein as to the most desirable plan or scheme for obtaining a good water supply for the municipality and the citizens thereof.

In passing upon the questions presented we should not close our minds to recognized facts, and are allowed to take judicial notice of certain physical conditions which appear and are essential to a proper decision of the matter. We know that Reddie's River is a bold mountain stream, and at the point indicated, not far from its source; and we know, too, that there are methods very generally in use by which water far more unpromising than this is made available for domestic as well as general purposes, and there is no good reason to doubt that, by a simple and feasible way of treating the water of the stream in question, a copious, satisfactory and healthful supply of water can be obtained.

One grave objection to adopting and acting on plaintiff's statements—made apparently as facts, though it clearly appears that they amount to nothing more than apprehensions on their part, from conditions and actual facts fully set out—is that, under our decisions, the same position which calls for a restraining order may, and likely will, require, if the complaint is reasonably supported by affidavits containing allegations of the same general character, that the question should be referred to a jury for ultimate decision; and thus the people who have sanctioned the measure by their votes will be indefinitely deprived of the water desired and necessary for their comfort, convenience and safety. If this plan is checked, any other is liable to be arrested on just such indefinite allegations, and it will prove well-nigh impossible for the municipal authorities ever to carry into effect their lawful and beneficent purpose of securing for the inhabitants of the town a satisfactory and sufficient water supply.

It is well recognized, and chiefly for the reasons presented here, that these matters of local concern are and should be matters largely of local regulation, and only in rare and extreme cases are the courts allowed to interfere in any way, and should never undertake to direct and control local authorities as to how they should act on matters which rest in their judgment and discretion. While there are general allegations of serious injury threatened if the present plan of defendant is carried out, on considering the complaint as a whole, it is clear that such statements rest only in apprehension and surmise, and that on the real and ultimate facts this suit is but an effort to compel the municipal government of North Wilkesboro to adopt a different plan than that on which it has entered, and one which plaintiffs think will better promote the welfare of the town.

This is clearly a matter which rests in the judgment and discretion of the town government, and, as heretofore stated, it is a principle fully established, here and elsewhere, that courts will never undertake to direct and control these municipal authorities as to how they shall act or what plan or method they should adopt on matters which the law has wisely referred

to their judgment and discretion.  *Board of Education v. Commissioners,* 150 N. C., 116; *Kinston v. Wooten,* 150 N. C., 295; *Ward v. Commissioners,* 146 N. C., 534; *Brodnax v. Groom,* 64 N. C., 244; *People v. Knickerbocker,* 114 Ill., 539; *Cecott v. County of Wayne,* 59 Mich., 509.

I am of opinion that the position of the defendant should prevail and the judgment of the court below dissolving the restraining order should be affirmed.

BROWN, J., dissenting: I concur in the dissent of *Mr. Justice Hoke.*

It is true that a demurrer technically admits the truth of the facts alleged in the complaint, but it also raises the question of the power of the courts to grant the relief prayed for in the case, and that relief, broadly stated, is that the court take away from the municipal officers of the town the right to determine what is best for their municipality and to substitute in their places the judgment of a jury.

The real question involved on this appeal is, does the complaint state a good cause of action? This is raised as well by the demurrer as by the motion made by defendant in this Court to dismiss the action, which motion, it is conceded, can be made at any time in the court below or in this Court.

Assuming that the defendant had filed an answer and denied every allegation in the complaint, it could then make the same motion. I see nothing alleged in the complaint which, if denied by answer, can properly be submitted to a jury or determined by a judge. The only issue which can be raised upon this complaint is as to whether the commissioners of the town of North Wilkesboro have agreed upon and are about to install a water-supply system which may be deleterious to the health of its inhabitants.

There is no suggestion, much less allegation, that the commissioners, or any of them, are acting in bad faith or have any personal or pecuniary interest in the lands comprising the watershed, or in Hackett's pond, or are acting in any dishonest or fraudulent manner. Therefore I am of opinion that, under

our Constitution, laws and form of government, the courts are not vested with a supervision and control of the honest exercise of the powers of the commissioners of the town. Under the law governing the town of North Wilkesboro the duty of providing a supply of wholesome water is left to the sound discretion of the town authorities whom the electors have chosen to administer their affairs. It is hardly to be supposed that such authorities have adopted a system of water supply which will bring on an epidemic of typhoid fever, and we are bound to assume that they have given the matter a thorough investigation, with, perhaps, expert assistance, before deciding so important a matter. Are twelve persons or five judges any better able to determine what is best for the welfare of the town than its chosen authorities, who reside there, drink the same water, breathe the same air, pay the same taxes and are in all respects identified with the interests of all other citizens? The power to determine the matter is delegated, under the Constitution and laws of the State, to the board of commissioners of the town. What right has this Court to substitute a jury of twelve men in their places, or to enjoin the honest exercise of powers conferred exclusively upon the defendants?

I know of no case to which the words of a great judge are more applicable than to this: "For the exercise of powers conferred by the Constitution," says *Chief Justice Pearson,* "the people must rely upon the honesty of the members of the General Assembly and of the persons elected to fill places of trust in the several counties. The Court has no power, and is not capable if it had the power, of controlling the exercise of power conferred by the Constitution upon the legislative department of the Government or upon the county authorities." *Brodnax v. Groon,* 64 N. C., 250.

Again the Chief Justice says: "In short, this Court is not capable of controlling the exercise of power on the part of the General Assembly or of the county authorities, and it cannot assume to do so without putting itself in antagonism as well to the General Assembly as to the county authorities and erecting a despotism of five men, which is opposed to the fundamental principles of our Government and the usages of all times past."

We have affirmed and acted upon these heretofore well-settled principles at this term, in *Hightower v. Raleigh, ante,* 569.

In the absence of any allegations impeaching the good faith of the commissioners in adopting a water-supply system, I think the motion to dismiss the action should be granted.