The plaintiffs allege:
1. That they are citizens and property owners of the town of North Wilkesboro, N.C. and as such are interested in the welfare of said town and its inhabitants, and have started a suit in the Superior Court of Wilkes County against the above-named defendant.
2. That an election was held by the voters of said town on the question of issuing bonds to put in a system of waterworks in said town, at an election held on the ___ day of __________, 1908, in the sum of $30,000 for said waterworks, which election was declared carried.
3. That, a short time prior to said election, the Mayor and Board of Commissioners of North Wilkesboro, fearing that said bond issue would not carry, caused to be published and circulated among the voters the following circular: "To the voters of North Wilkesboro: As there seems to be quite a misunderstanding as to the position of mayor and commissioners on the waterworks question, we wish to state that each and every member of said board are in favor of the gravity system, with water brought from Brushy Mountain preferred, and are not in favor of taking water from Reddie's River. We wish to state, further, that there is not any proposition on foot to purchase the Hackett Bros. water power. J. E. Finley, J. R. Combs, R. W. Gwyn, H. O. Absher, J. D. Moore, commissioners; Oscar C. Dancy, mayor."
4. That since such election, in utter violation of their pledge, three of the above-named commissioners are attempting to close a deal with Hackett Bros., or rather with the Gordon Manufacturing and Power Company, for the purchase of said mill tract of land, with all its appurtenances, for said town, and out of the mill pond are proposing to supply a system of waterworks by pumping water with an engine, which water is to be used for drinking purposes by the inhabitants of said town.
5. That Reddie's River, which flows into Hackett's mill pond, passes through one of the most populous sections of Wilkes County, as well as many creeks and smaller tributaries that flow into said river, and it would be utterly impossible for the town authorities to comply (648) with sections 3045 and 3048 of the Revival in protecting the watersheds.
6. That by reason of many families living upon the numerous watersheds for the first fifteen miles, to say nothing of the many who live beyond the fifteen-mile limit, but are upon the watersheds, it will be impossible to use this water for drinking purposes, and it will render the inhabitants of the town liable to the great scourge of typhoid fever which frequently rages to considerable extent upon the watersheds of Reddie's River, as affiant believes.
7. That several years ago typhoid fever prevailed in the town to a *Page 532 
very considerable extent, and your affiants have heard that the doctors attributed it to the use of ice taken from Hackett's mill pond, and directed that the use of ice from said pond be stopped.
8. That not only are the watersheds on Reddie's River outside of the corporate limits of said town so thickly settled that it renders its water unfit for use, but the watersheds of said river within the corporate limits of said town, if there were no other objection, would render the use of said water dangerous to the life of the citizens.
9. That upon the watersheds within said town there are many dwelling houses, and the only drainage is into Reddie's River, and only at enormous expense to said residents of the town, or to the town itself, can this drainage be brought into the river below the mill pond.
10. That if permitted to buy this property and operate from said mill pond a system of waterworks, irreparable damage and loss will be sustained, not only by the plaintiffs, but the health and well-being of the citizens of the town will be greatly endangered.
It was further alleged that a supply of pure water could be had from the Brushy Mountains, etc., all of which was duly verified.
Plaintiffs ask that a restraining order issue, etc. Defendant demurred to the complaint, and assigned as grounds for demurrer (649) that —
1. It does not appear that plaintiffs made application to the town or its authorities to rescind the contract for the purchase of the Hackett property.
2. That the petition, taken as a whole, does not set forth grounds sufficient to justify injunctive relief, in that (a) it does not show that the commissioners of said town grossly abused their discretion in making a contract for the purchase of the Hackett property; (b) it does nothing more than question the ability of the town to maintain a waterworks system, using the water from Reddie's River, inspecting its watershed and filtering said water, as to which the court can not interfere.
His Honor sustained the demurrer, refused the injunction, and adjudged that plaintiffs pay the costs of the action. Plaintiffs appealed.
While the court does not in express terms dismiss the action, it is evident that such is the effect of the judgment. The only relief asked is that defendant be enjoined from installing the system of water supply for the people of the town, as set out in the complaint. For the purpose of disposing of this appeal, the facts set out in the complaint must be taken as true. The defendant relies upon the principle announced *Page 533 
in Merrimon v. Paving Co., 142 N.C. 539, to sustain its first ground of demurrer. That case is not in point. There the corporate authorities had made a contract with the paving company to pave the streets, and plaintiff thought that the company was not performing its contract, and that the officers, whose duty it was to compel it to do so, in accordance with its terms, were derelict in the discharge of their duty. Without applying to the governing board of the municipality to do so, they brought the action. Upon a well-settled principle and uniform line of decisions, we held that they could not maintain it without making the essential averments, showing that the authorities refused to perform their duty, or such other averments as showed that a demand was useless and would be of no avail. Here the allegation is that the municipal authorities are threatening to establish and maintain a public nuisance, endangering the health and lives of the people. (650) The demurrer admits the truth of the allegation. The first cause of demurrer can not be sustained. The second cause assigned involves the proposition that, unless a gross abuse of the discretion vested in the authorities is alleged, the court has no power to interfere. The rule by which the courts have been governed in the exercise of the injunctive power is well stated by Mr. Justice Hoke, in Rosenthal v. Goldsboro,149 N.C. 128. There the authorities, deeming it conducive to the public health, directed the removal of shade trees on the street upon which plaintiff resided. It is said in the opinion: "The Court will not interfere with the exercise of discretionary powers conferred upon municipal corporations for the public welfare, unless their action should be so clearly unreasonable as to amount to an oppressive and manifest abuse of their discretion." This is sustained by a number of authorities cited in the opinion, and, we think, correctly marks the limitation upon the exercise of discretionary municipal authority. It falls short of holding that the discretion is without any limitation. It is not consistent with our conceptions of a municipal government of granted powers — certainly in the method of exercising them — that there should be no limitation, or, at least, that when called into question, in good faith, by those who are interested in the result, officers may admit such allegations as are made here and successfully maintain the position that the citizens are without remedy. Conceding that the rule is correctly stated in the decision cited, we think that plaintiffs' allegations bring their case within the power of the Court to interpose. It is not necessary to allege corruption or moral turpitude. It is manifest that a municipal corporation has no legal right to establish and maintain a condition which creates a public nuisance, per se — that is, a condition which seriously endangers the health and lives of the people. Harper v. Milwaukee, 30 Wis. 365. The injunctive power of the court will *Page 534 
be exercised with great caution, and only in a clear case. We decide in this appeal that the defendant was called upon to answer the allegations in the complaint. We do not think it should be permitted to dismiss charges so serious in their character. It may be that, (651) upon the filing of an answer, the authorities can show that the conditions are not correctly stated, and that by proper precaution the proposed water supply is either not impure or that by proper methods it can be purified. Of course, the Court could not undertake to direct the method of supplying the town with water. As the case is before us only upon demurrer, we forbear discussing the question further than is necessary to dispose of the exception to his Honor's judgment. The defendant will file such answer as it may be advised, and upon notice the motion for an injunction will be heard before the judge having jurisdiction in the premises.
There is
Error.