AUGUSTO R. SOLTERO, SUPERINTENDENTE DE SEGUROS, promovente, *v.* HON. CHARLES E. FOOTE, JUEZ DE LA CORTE DE DISTRITO DE MAYAGÜEZ, y THE MAYAGÜEZ DOCK AND SHIPPING CO., demandados.

No. 48.—*Sometido:* Mayo 14, 1930. *Resuelto:* Agosto 2, 1930.

*Hon. Attorney General James R. Beverley* y *Felipe Janer,* abogados del promovente; *José Sabater,* abogado de la demandada The Mayagüez Dock and Shipping Co.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

El presente es un caso de auto inhibitorio expedido por esta Corte Suprema contra la Corte de Distrito de Mayagüez para que se abstenga de conocer de un *mandamus* establecido contra el Superintendente de Seguros de Puerto Rico por corresponder la jurisdicción en el asunto exclusivamente a esta Corte Suprema.

The Mayagüez Dock & Shipping Co. pidió a la corte de distrito que expidiera un auto de *mandamus* contra Augusto R. Soltero, Superintendente de Seguros, ordenándole que procediese a clasificar los obreros que trabajan en su empresa, bajo los números 7034 y 7317 del Manual Workmen's Compensation Insurance.

El hecho sexto de la demanda, dice:

"Que el demandado en su capacidad de Superintendente de Seguros de Puerto Rico, ha adoptado ciertas reglas, y se ha guiado por el Manual Workmen's Compensation Insurance y las reglas, clasificaciones y cuotas y tipos, establecidos en el mismo, y sin hacer distinción alguna de los grupos de obreros que trabajan en la empresa de la demandante, o sea, los que trabajan en las lanchas y los que. trabajan en el muelle, en tierra, con sus brazos, y con carretillas de mano únicamente, ha aplicado a los obreros de la demandante, el número de dicho Manual o Código 7309 que se refiere a toda clase de tipos de estibadores y como consecuencia de esa clasificación dicho Superintendente ha obligado a la demandante a pagar por concepto

de seguro de sus trabajadores u obreros en su empresa, al fondo del Estado, para el ejercicio de 1928–1929, la cantidad de $3,701.26.''

Y el octavo, expresa:

''Que el demandado al aplicar a la demandante el número del Código o Manual 7309, a pesar de las protestas y oposiciones de la demandante, se ha extralimitado en sus poderes como tal Superintendente de Seguros y ha abusado de su discreción, por las alegaciones siguientes:

''(a) El número 7309 del Código que aplica el Superintendente demandado se refiere a toda clase de tipos de estibadores, diferente de las operaciones de carga y descarga que se hace estrictamente con los brazos y carretillas de mano, sin usar grúa o eslinga ni ninguna otra maquinaria; y los trabajadores de lanchas; y el Superintendente, dentro de la justicia y equidad y siguiendo el espíritu de la ley, debe adoptar siempre el tipo más bajo de cuota y en el caso de la demandante, debe hacer la distinción de los obreros de la demandante que tripulan y trabajan en las lanchas al costado de los buques en el puerto de Mayagüez y los que trabajan en tierra, en su muelle, y son independientes de aquéllos.

''(b) Debido a la injusta clasificación hecha por el Superintendente demandado, la demandante se ve obligada a pagar $7.51 por cada $100.00, o sea, ha aplicado a la demandante la cuota más cara, sin tener en cuenta que en el trabajo que se realiza en la empresa de la demandante no hay riesgo grave y sin que exista causa o razón alguna para aplicar a la demandante la cuota más cara.

''(c) El Superintendente demandado debe clasificar a los lancheros de la demandante que llevan mercancías desde el muelle al costado de los buques, y viceversa, bajo el número 7034 del Código, que paga $2.80 por ciento; y a los trabajadores u obreros que trabajan en tierra, en el muelle, sin maquinaria de ninguna clase y sí sólo con sus brazos y carretillas de mano, bajo el número 7317 que paga $2.32 por ciento.''

Expedido el auto, entre otras alegaciones el demandado suscitó la de falta de jurisdicción de la corte de distrito para conocer del asunto, y la corte decidió la cuestión levantada como sigue:

''Hoy 31 de marzo de 1930 se llamó este caso para discutir la moción de eliminación del demandante de partes de la contestación, compareciendo el demandante por su abogado Lcdo. José Sabater y el

demandado por el suyo Hon. José R. Gelpí, Fiscal del Distrito en representación del Hon. Attorney General, y alegó en corte abierta y verbalmente la excepción general de falta de jurisdicción de esta corte en este caso, fundándose en que de acuerdo con la sección 27 de la Ley número 85 de Indemnizaciones por accidentes del Trabajo, esta corte no tenía jurisdicción para conocer de este caso, sino la Corte Suprema de Puerto Rico. La corte, después de oír las argumentaciones del Sr. Fiscal y del abogado de la demandante, y de haberse sometido dicha excepción, resolvió en el acto declarar sin lugar, como declara sin lugar, dicha excepción y se funda para ello en lo siguiente:

"La sección 27 de la Ley de Indemnizaciones por accidentes del Trabajo, dice como sigue:

." 'Todo asegurador radicará con el Superintendente de Seguros de Puerto Rico, sus clasificaciones de riesgos y premios relativo a las clasificaciones propuestas, las cuales no tendrán efecto hasta que hayan sido aprobadas por el Superintendente como adecuadas y razonables para los riesgos a que han de aplicarse respectivamente; Disponiéndose que a petición del asegurador o de parte agraviada las reglas del Superintendente estarán sujetas a ser revisadas por la Corte Suprema de Puerto Rico. El Superintendente puede retirar su aprobación a la licencia extendida a cualquiera compañía de seguros que hiciere negocio de seguros de compensaciones a obreros, y todas las pólizas extendidas por dichas compañías no estarán en vigor hasta que fueren aprobadas por el Superintendente de Seguros.'

"Interpretando esa sección de la ley y teniendo en cuenta el propósito de la misma, en lo que se refiere a asegurar a los obreros contra accidentes, la corte llega a la conclusión de que no se trata en este caso de discutir las reglas y clasificaciones de riesgos radicadas por aseguradores con el Superintendente de Seguros, en términos generales, que es el caso para ser revisado por la Corte Suprema de Puerto Rico, cuando el asegurador o parte agraviada solicitaren la revisión; sino que en este caso se aceptan las reglas del Superintendente y no está conforme la demandante en la aplicación que ha hecho el Superintendente al negocio o empresa particular de la corporación demandante, en lo que respecta a la prima que debe pagar la demandante por el seguro de sus obreros.

"No cayendo, por lo tanto, el caso presente en el establecimiento de una norma sobre las reglas del Superintendente de acuerdo con los riesgos a que hayan de aplicarse, a virtud de clasificaciones propuestas, según la sección 27 de dicha ley, esta corte tiene jurisdic-

ción para conocer de este caso y desestima la excepción de falta de jurisdicción.''

Fué entonces que el Superintendente de Seguros radicó su solicitud de auto inhibitorio ante esta Corte Suprema. Expedido el mandamiento se oyó a ambas partes concediéndoseles diez días para la presentación de alegatos escritos. Sólo el Superintendente de Seguros presentó el suyo.

■ Como puede verse por la opinión del juez de distrito que dejamos transcrita, todo depende en este caso de la interpretación que se dé al disponiéndose de la sección 27 de la Ley No. 85 sobre Indemnizaciones por Accidentes del Trabajo, aprobada el 14 de mayo de 1928, que dice:

"Disponiéndose que a petición del asegurador o de parte agraviada las reglas del Superintendente estarán sujetas a ser revisadas por la Corte Suprema de Puerto Rico,"

cuyo texto inglés lee como sigue:

"Provided, that upon petition of the insurer or other party aggrieved, the rulings of the Superintendent shall be subject to review by the Supreme Court of Porto Rico.''

El texto español se presta a primera vista a la interpretación que le diera el juez de distrito, pero el texto inglés, los precedentes y la jurisprudencia, el hecho de no proveer la ley ningún otro recurso contra las resoluciones del Superintendente y un estudio cuidadoso de los propios razonamientos de la corte de distrito, nos llevan a la conclusión inevitable de que la jurisdicción exclusiva en estos casos corresponde, por disposición expresa de la ley, a esta Corte Suprema.

El peticionario sostiene que el texto inglés es el que debe servir de base para la interpretación judicial porque la Ley No. 85 citada es una adaptación para Puerto Rico del estatuto de Massachusetts sobre la materia, citando en su apoyo la sección primera de la Ley No. 8 para determinar las reglas de hermenéutica legal aplicables en casos de discrepancia entre los textos castellano e inglés de una ley, aprobada en

12 de noviembre de 1917, tomo II de las leyes de ese año, página 211.

Creemos que en efecto la Ley No. 85 procede de los estados continentales y que por tanto debe prevalecer el texto inglés y entonces las palabras "rulings of the Superintendent" tienen una significación mucho más amplia que las palabras "reglas del Superintendente" y la resolución del Superintendente a que se refieren los hechos sexto y octavo de la demanda de *mandamus* de The Mayagüez Dock & Shipping Co. que transcribimos al principio de esta opinión, es claramente un *ruling* del dicho Superintendente, sujeto solamente a ser revisado por esta Corte Suprema. Convenimos con el peticionario en que se trata de un recurso de revisión de la misma naturaleza que el otorgado para ante las cortes de distrito, de las decisiones de la Comisión Industrial, por la sección 15 de la propia Ley No. 85 de 1928. No se explica cómo en un caso el legislador escogió las cortes de distrito y en el otro la Corte Suprema, pero lo cierto es que lo hizo expresamente y mientras la ley subsista es necesario cumplirla como está.

■■ Aunque tratándose de leyes nuevas no existe jurisprudencia abundante, el peticionario nos ha citado el caso de *Brest* v. *Commissioner of Insurance,* 169 N. E. R. 657, 658, del cual parece oportuno transcribir lo que sigue:

"La facultad y deber de la corte con respecto a peticiones de esta naturaleza están prescritos en los estatutos de 1929, capítulo 166, que enmiendan estatutos anteriores, en la siguiente forma: 'Toda persona o compañía que se creyere perjudicada por cualquier actuación, orden, conclusión o decisión del comisionado de conformidad con este artículo puede,' dentro de un período de tiempo especificado, 'radicar una petición ante la suprema corte judicial para el condado de Suffolk para que se revise tal actuación, orden, conclusión o decisión. . . La corte tendrá jurisdicción de equidad para modificar, enmendar, anular, revocar, o confirmar tal actuación, orden, conclusión o decisión, revisará todas las cuestiones de hecho y de derecho

allí envueltas y podrá dictar cualquier orden o decreto que sea adecuado. La decisión de la corte será final y concluyente para las partes.' Esta fraseología no significa que mediante una simple petición, sin más, las partes tienen derecho a solicitar de la corte que revise todo el campo cubierto por el comisionado y llegue a sus propias conclusiones. Ellas traen al procedimiento de revisión los efectos principales de la práctica en equidad. G.L.c. 214, sec. 12. La petición debe contener alegaciones en que se especifiquen con certeza, brevedad y con un grado de particularidad adecuado los fundamentos en que se basa el peticionario para solicitar el remedio. Si en casos como el presente, conclusiones de hecho a que llegara el comisionado son atacadas, deben especificarse en la petición las conclusiones y los señalamientos de error. ' "La parte expositiva de la petición debe contener todo hecho pertinente, necesario para dar derecho al demandante al remedio solicitado." Esta parte de la petición debe contener la causa del demandante y su derecho al remedio solicitado; y el hecho necesario debe ser alegado clara y expresamente y no en forma vaga e indeterminada, de manera tal que no tenga que ser explicado mediante inferencia o haciendo referencia a otras partes de la petición.' Stevens v. Hayden, 129 Mass. 328, 332; Bartlett v. New York, New Haven, & Hartford Railroad, 221 Mass. 530, 539, 109 N.E. 452; Boston v. Treasurer and Receiver General, 237 Mass. 403, 415, 130 N.E. 337. De conformidad con el capítulo 166 de los estatutos de 1929, los demandantes, mediante las debidas alegaciones, podían atacar las conclusiones de hecho a que llegara el demandado. Tales conclusiones no son atacadas por las alegaciones de estas peticiones y deben ser aceptadas como ciertas. Por tanto, es innecesario discutir el significado y alcance de la 'revisión' de que inviste a la corte el ameritado capítulo 166. Véanse los casos de Swan v. Justices of Superior Court, 222 Mass. 542, 547, 548, 111 N.E. 386; Mayor of Medford v. Judge of District Court, 249 Mass. 465, 471, 144 N.E. 397.''

Por virtud de todo lo expuesto, no estimando suficientes las razones alegadas en pro de la jurisdicción de la Corte de Distrito de Mayagüez, *se ordena* a ésta que en definitiva se *abstenga de seguir conociendo del caso de* mandamus *a que se ha hecho referencia por carecer de jurisdicción.*

El Juez Asociado Señor Texidor no intervino.