THE MAYAGÜEZ DOCK & SHIPPING COMPANY, peticionaria, *v.* EL SUPERINTENDENTE DE SEGUROS DE PUERTO RICO, AUGUSTO R. SOLTERO, demandado.

No. 1.—*Sometido:* Noviembre 9, 1932. *Resuelto:* Junio 15, 1933.

*J. Sabater*, abogado de la peticionaria; *Hon. Procurador General Charles E. Winter (James R. Beverley* en el alegato), *A. Ortiz Toro, Procurador General Auxiliar* y *V. Brunet,* abogados del demandado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

El presente es un recurso de revisión interpuesto de acuerdo con la sección 27 de la Ley No. 85 de 1928, sobre Indemnizaciones por Accidentes del Trabajo, (*Soltero, Supt. de Seguros* v. *Foote, Juez,* 41 D.P.R. 509), y tramitado siguiendo las reglas fijadas en el caso de *Aguadilla Lighter & S. Co.* v. *Soltero,* 43 D.P.R. 219.

Se queja la Mayagüez Dock & Shipping Co. de que el Superintendente de Seguros aplicó indebidamente a sus obreros el No. 7309 del manual "Workmen's Compensation Insurance." Sostiene que deben aplicársele los números 7034 y 7317 del indicado manual.

La posición de la compañía se expone en una carta dirigida por su Presidente al Superintendente de Seguros que dice:

"Nos permitimos referirnos a la entrevista recientemente sostenida con Ud. por el que suscribe, en relación con los tipos de seguro de nuestros obreros.

"Para su conocimiento acompañamos copia de la carta que con fecha noviembre 28 ppdo. dirigimos al Tesorero de Puerto Rico cuando primeramente expusimos a dicho Departamento nuestros puntos de vista sobre el particular.

"Mientras tanto y luego de habernos entrevistado con Ud. hemos obtenido un manual de Workmen Compensation Insurance y el boletín No. 1 contentivo de los tipos aplicables en Puerto Rico, este último suministrádonos por vuestra oficina.

"Habiendo estudiado algo dicho manual y de acuerdo con el criterio que, a nuestro mejor entender, hemos podido formar, somos de opinión que los trabajadores que empleamos en nuestros almacenes no pueden considerarse como los comúnmente conocidos por 'Stevedores.' Nos parece que estos trabajadores son aquéllos directamente relacionados con la carga y descarga de barcos, tales como los que trabajan a bordo de los propios barcos y en los muelles de espigón adonde atracan vapores, mientras que los trabajadores que utilizamos nosotros en nuestros almacenes hacen solamente el trabajo de mover cargas en carretillas o a mano de un lado para otro y más bien caen bajo la clasificación 'Storage Warehouses' code No. 8291, cuyo tipo es $2.47 o si acaso bajo la clasificación de 'Warehousing' code No. 8292, tipo $2.67. En realidad el negociado en relación con el cual utilizamos nuestros trabajadores es el de almacenaje, recibo y despacho de mercancía en almacenes, o sea el propiamente llamado en los Estados Unidos 'Warehouses' o 'Storage Business.'

"Al querérsenos aplicar la clasificación 'Stevedores' se confunde nuestro negocio con el de muelles de espigón adonde atracan vapores y adonde trabajan los jornaleros conocidos 'Longshoremen' que son los que, como Ud. sabe, hacen el trabajo propiamente llamado 'Stevedoring.'

"Solicitamos, pues, que en lugar de la clasificación No. 7309 que se nos ha aplicado, se nos aplique la No. 8291 correspondiente a 'Storage Warehouse' o si acaso la No. 8292 correspondiente a 'Warehousing.'

"Bajo la clasificación 'Stevedoring' existe la No. 7317 para los trabajadores que, como en el caso de los nuestros, no tienen relación con grúas o eslingas (hoisting of cargo) cuya clasificación, a la que le corresponde un tipo más bajo que a las indicadas arriba, nos resultaría más beneficiosa, pero no pretendemos que se nos asigne esa clasificación, porque en realidad no es aplicable a nosotros, ya que nuestros trabajadores no hacen en absoluto el trabajo de 'Stevedoring.' El trabajo que ellos hacen es solamente el de recibo y despacho en almacenes o depósitos.

"Una inspección ocular de nuestro negocio comprobaría este aserto y tendería a que desaparezca la confusión que existe y se nos apliquen las clasificaciones que realmente nos corresponden. Por consiguiente nos permitimos sugerir a Ud. la conveniencia, o tal vez la necesidad que hay de esa inspección, suplicándole, que si a bien lo tiene, se sirva disponer que la misma se lleve a efecto.

"En cuanto a los hombres que tripulan las embarcaciones que usamos para el servicio de alijos en este puerto, a éstos también se les ha aplicado las clasificaciones 'Stevedoring' (N.O.C.) No. 7309 cuyo tipo es $7.51. Estos hombres no hacen tampoco el trabajo de 'Stevedores.' El manual da una clasificación para 'Barges, scows, lighters' y siendo nuestro negocio precisamente el de transportar carga mediante ancones o barcazas (lighters), nos parece que ésta es la clasificación que nos corresponde y nos permitimos pues someter este punto a su consideración.

"Quedan luego los tripulantes u operadores de las lanchas remolcadoras y los jornaleros que trabajan en la composición y reparación de embarcaciones, a los cuales se les ha aplicado la clasificación No. 7088, cuyo tipo es $5.09. Como Ud. verá, el manual da una clasificación de 'Tug boats' para los primeros y de 'Boat building' (N.O.C.) para los segundos. También nos permitimos llamar su atención a estas clasificaciones.

"Olvidábamos hacer mención de los dependientes de muelle y almacén, los cuales, según su carta sept. 12, 1928, caen bajo la clasificación 8709, que paga 97¢ cada $100. Sin embargo, se nos ha aplicado la clasificación 7088, que paga $5.09.''

Y la del Superintendente en su carta contestación, de la cual transcribimos lo que sigue:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"Esta imposición preliminar corresponde, según los hechos del caso, al período contributivo de agosto 13, 1928 a junio 30, 1929.

"La liquidación hecha por el Tesorero de Puerto Rico es como sigue:

| Clave | Ocupación | Tipo | Jornales | Cuotas |
|-------|-----------|------|----------|--------|
| 7309 | Carga y descarga de vapores | 7.51 | $42,000 | $3,154.20 |
| 8810 | Oficina | 0.05 | 5,000 | 2.50 |
| 7088 | Servicio de alijo | 5.09 | 7,360 | 374.64 |
| | Total | | $54,360 | $3,531.34 |

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"A los efectos de hacer más clara la discusión de su caso separaremos la cuestión en dos partes, a saber:

"*a*.—Lo que respecta a los dependientes de muelle.

"*b*.—Lo que respecta a la clasificación gobernante de su riesgo.

"Respecto a la primera parte del problema esta Superintendencia resuelve el caso a su favor por estar absolutamente de acuerdo con las disposiciones del Manual, esto es, se resuelve que los $2,500 de *payroll* sometidos con su planilla y que corresponden a la clasificación de empleados de almacén deben ser sometidos a un tipo de 97¢ bajo la clave 8709.

"Respecto a la segunda parte, esto es, a la naturaleza y clasificación de su riesgo la resolución es como sigue:

"1.—Su negocio es un negocio de carga y descarga en el puerto de Mayagüez. Las operaciones de carga y descarga están agrupadas a los efectos de la imposición de la prima sin tomar en consideración si esas operaciones se llevan a cabo en sitios donde hay muelles o en sitios donde hay malecón. Esto es, la alegación específica de que difiere en cuanto a las condiciones del puerto de otros trabajos o industrias de la misma naturaleza, es inmaterial.

"La palabra 'stevedoring' se refiere al trabajo que hace el estibador, que de acuerdo con el diccionario de Webster es:

" 'one whose occupation is to load and unload vessels in port.'

"Por esta definición se ve que es inmaterial cuál ha de ser o cuál sea la condición del puerto.

"Además, no hay nada en el Manual que diferencie el trabajo en un puerto del trabajo en cualquier otro puerto.

"Respecto al modo de llevar a cabo el trabajo es que realmente hay una distinción, que es la siguiente:

"*a*.—Si la carga y descarga se hace *exclusivamente* a mano y por medio de carretones de mano, la ocupación de 'Stevedoring' cae bajo una clasificación.

"*b*.—Si por el contrario el trabajo se lleva a cabo en cualquier otra forma, esto es, que no sea *exclusivamente* a mano o por medio de carretones de mano, entonces la ocupación cae bajo otra clasificación.

"Las disposiciones del Manual son claras y terminantes: Respecto a la primera clasificación a que nos hemos referido, el texto exacto del manual es como sigue:

" 'Stevedoring—by hand or by means of hand trucks exclusively —no hoisting of cargo (N.P.D. in connection with a single vessel.) This classification is available only upon specific assignment of the rating organization having jurisdiction. When policies are issued

covering both "Stevedoring (N.O.C.)" and "Stevedoring—by hand or by means of hand trucks exclusively," an explanatory endorsement shall be attached providing that no division of payroll will be permitted in connection with the loading and unloading of any one vessel.'

"Respecto a la segunda, el texto del Manual es exactamente como sigue:

" 'Stevedoring (N.O.C.) Drivers, Chauffeurs and their helpers must be rated as No. 7309 "Truckmen." "Stevedoring—Tallymen and checking clerks engaged in connection with stevedoring work." 8709.'

"En relación con la primera clasificación hay dos puntos importantes a considerar que son:—

"1.—Las palabras 'no hoisting of cargo', y

"2.—El '(N.P.D. in connection with a single vessel.)'

"El adverbio *'no'* tiene una importancia extraordinaria según puede verse en la página 12-a penúltimo párrafo que dice así:

" 'When a classification includes a restrictive clause beginning with "NO" or "NOT" such classification SHALL NOT be available for any risk which includes ANY operation described in such restrictive clause.'

"La disposición que antecede es terminante; pero hay aún más, la nota primera al pie de la clasificación 7317, página 80 del Manual dice así: 'this classification is available *only* upon specific assignment of the rating organization having jurisdiction,' lo que demuestra que la aplicación de la clasificación 7317 es tan peligrosa que no puede hacerse sin que haya sido previamente consultada al y aceptada por el Superintendente de Seguros quien, de acuerdo con la ley, tiene jurisdicción exclusiva en lo que respecta a la fijación de tipos.

"Si tomamos en consideración además la regla 'a' de las que se refieren a la división del *payroll*, página 10 del Manual y que dice así:

" 'The term "Risk", as used in this Manual, shall mean and include the entire operations of one employer within a given state', y si además tomamos en consideración el hecho de que todas sus ocupaciones constituyen un riesgo y que este riesgo es el que corresponde al negocio de carga y descarga de barcos y que sus actividades son 'in connection with the loading and unloading of vessels' sin que para los efectos del argumento y de la ley sea relevante el que el peligro de la eslinga exista por voluntad del patrono o por necesidades circunstanciales del trabajo en sí, siempre que sea una realidad la existencia de la eslinga dentro del campo de sus operaciones por

estar su negocio *en conexión con* la carga y descarga de barcos que usan la eslinga, tenemos que llegar a la conclusión que el caso de la Mayagüez Dock and Shipping Co., Inc., es un caso claro bajo la clasificación 7309 N.O.C. que hemos citado más arriba.

"De acuerdo con esta decisión por la presente se resuelve que en consonancia con la planilla rendida por el patrono en 25 de octubre de 1928 y que obra en los archivos del Departamento de Hacienda, la liquidación del caso de la Mayagüez Dock & Shipping Co. Inc., y la cuota provisional a pagar por concepto de seguro en el Fondo del Estado durante el período comprendido entre agosto 13, 1928 y junio 30, 1929 debe ser como sigue:

| Clave | Ocupación | Tipo | Jornales | Cuotas |
|-------|-----------|------|----------|--------|
| 7309 | Carga y descarga de vapores | $7. 51 | $42,060.00 | $3,158.71 |
| 8810 | Oficina | 0.05 | 5,000.00 | 2.50 |
| 7088 | Servicio de alijo | 5.09 | 4,800.00 | 244.32 |
| 8709 | Dependientes de muelle | 0.97 | 2,500.00 | 24.25 |
| | | | $54,360.00 | $3,429.78 " |

Como puede verse, el Superintendente aceptó una de las objeciones de la compañía, la referente a los dependientes de muelle. Mantuvo su criterio en las otras cuestiones levantadas.

Creemos que el Superintendente de Seguros obró correctamente al adoptar como guía el manual "Workmen's Compensation Insurance." No quiere ello decir, sin embargo, que deba seguirse ciegamente. Si las peculiares circunstancias de las condiciones en que se trabaje en Puerto Rico así lo demandaren, deben dichas circunstancias tomarse en consideración.

La carta de la Mayagüez Dock & Shipping Co., da la idea de que su negocio es simplemente el de un almacén de depósito, y no es en verdad así. Ella realiza la carga y descarga de buques en el puerto, tomando el cargamento en sus lanchas y ancones al costado de los buques y trasladándolo a su muelle donde lo almacena y donde en su oportunidad lo entrega a las personas a quienes se destina.

En tal virtud no puede negarse que la calificación de estibadores para aquéllos de sus obreros que se dedican a la

carga y descarga de buques, es en verdad la procedente. En la carga y descarga de las lanchas y ancones al buque y del buque a las lanchas y ancones, úsanse los mismos aparatos que en la carga y descarga de dichos buques cuando atracan a los muelles de ribera o espigón. Quizá el riesgo sea mayor cuando se trata de la carga y descarga por medio de lanchas y ancones.

El traslado del cargamento de las lanchas y ancones al muelle, puede que sea distinto, lo mismo que la estiba de la carga en el muelle, y su entrega, pudiendo dichas operaciones verificarse a mano o por medio de carretillas de mano solamente.

Es éste el único punto en que nos parece lógica la contención de la Mayagüez Dock & Shipping Co. Quizá pueda establecerse una clara distinción entre los obreros que se dedican a un trabajo y a otro, o tal vez siendo los mismos obreros los que hacen uno y otro trabajo, se pueda adoptar alguna regla equitativa que fije un promedio en los pagos para calcular el tanto por ciento que deba satisfacerse por la prima del seguro. Deben existir precedentes, y el mismo manual al parecer lo indica al referirse como a algo aparte a los estibadores que realizan su trabajo exclusivamente a mano y por medio de carretones a mano, en cuyo caso no existe el riesgo de la eslinga.

Las alegaciones y las constancias del expediente, no contienen los datos necesarios para establecer por nosotros mismos la distinción o fijar la regla. Lo más que podemos hacer en justicia para ambas partes es devolver el asunto al Superintendente para que lo abra de nuevo a investigación y lo resuelva de acuerdo con los hechos y las circunstancias concurrentes y habiendo en consideración lo que se deja expresado en el párrafo anterior.

El Juez Asociado Sr. Córdova Dávila no intervino.